DAVID S. VOKEY & another[1] *vs.* MASSACHUSETTS INSURERS
INSOLVENCY FUND.

Middlesex.  April 8, 1980. — August 28, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Insurance,* Insolvency of insurer.  *Massachusetts Insurers Insolvency
Fund.  Set-Off.*

A claimant injured in a motor vehicle accident who seeks to recover from
the Massachusetts Insurers Insolvency Fund because of the insolvency
of the tortfeasor's insurer is required to exhaust any coverage available
under the uninsured motorist provision of his own insurance policy
and to offset the amount recovered against the liability of the Fund.
[390-391]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 6, 1979.

The case was heard by *Ronan, J.,* on a motion to dismiss.

The Supreme Judicial Court granted a request for direct
appellate review.

*Steven H. Bowen* for the plaintiffs.

*Joseph B. Bertrand* (*Stephen L. Mitchell* with him) for
the defendant.

QUIRICO, J.  This is an appeal by the plaintiffs from a
judgment of the Superior Court allowing a motion for the
defendant, Massachusetts Insurers Insolvency Fund (Fund),
to dismiss the action.  The question presented is whether an
injured person who has recovered under uninsured motorist
coverage, because of the insolvency of the tortfeasor's in-
surer, an amount equal to the Fund's liability, may recover
additional amounts from the Fund under the tortfeasor's in-
surance policy.  The parties presented the appeal to the Ap-

[1] Mary Ellen Vokey.

peals Court upon an agreed statement of the case in lieu of a record on appeal. Mass. R. A. P. 8 (a), as amended, 378 Mass. 924 (1979). We granted direct appellate review. We affirm the judgment of dismissal.

We summarize the agreed facts. The plaintiffs (hereinafter referred to as David and Mary Ellen) are husband and wife. On August 12, 1973, David was injured when he was a passenger on a motorcycle which was hit from behind by another motorcycle operated by Philip G. Knowlton, who is not involved in this appeal. A jury found that Philip G. Knowlton was 100% causally negligent. David obtained a judgment for $19,520.05 in his action for personal injuries, and Mary Ellen obtained a judgment for $3,306.34 in her action for loss of consortium.

The Knowlton motorcycle was insured by Summit Insurance Company of New York (Summit) under a policy providing coverage limits of $5,000 per person and $10,000 per accident. Summit subsequently became an insolvent insurer within the meaning of G. L. c. 175D, inserted by St. 1970, c. 261, § 1. The parties agree that the claims of both David and Mary Ellen are "covered claims" within the provisions of G. L. c. 175D.

At the time of the accident, Mary Ellen owned an automobile which was insured by American Policyholders' Insurance Company (APIC). The APIC policy included uninsured motorist coverage (coverage U), with liability limits of $10,000 per person and $20,000 per accident. David and Mary Ellen were both insured persons under this policy. The coverage U portion of the policy provided for arbitration in the event of failure to agree upon a claim, and provided that "the limit of liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person . . . as the result of any one accident."

On June 20, 1977, the plaintiffs filed a formal demand for arbitration with the American Arbitration Association, asking $10,000 for David for his bodily injuries, and $10,000

for Mary Ellen for her loss of consortium.[2] In response, APIC filed a complaint for declaratory relief in the Superior Court, seeking a declaration that the maximum amount available to both plaintiffs under coverage U was $10,000, and that Mary Ellen was not entitled under the terms of the coverage U section of the policy to recover damages for loss of consortium. APIC also sought a stay of the arbitration proceedings, which was rendered moot when APIC reached a settlement with David for $10,000, and David executed a release and trust agreement to APIC on March 17, 1979. Mary Ellen recovered nothing from APIC.

The plaintiffs filed the present complaint on April 6, 1979, seeking to require the Fund to pay Mary Ellen's judgment in full, and whatever part of the unsatisfied portion of David's judgment the court considered proper. The Fund filed a motion to dismiss the plaintiffs' complaint, and after a hearing the judge allowed the motion, and a judgment was entered dismissing the action. It is the plaintiffs' appeal from the judgment which is now before us.

The insolvency of Summit triggered the obligations of the Fund, which is "a nonprofit unincorporated legal entity" established to pay claims of insolvent insurers. G. L. c. 175D, §§ 1, 3. See *Massachusetts Motor Vehicle Reinsurance Facility* v. *Commissioner of Ins.*, 379 Mass. 527, 530 (1980); *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund*, 373 Mass. 798, 799 (1977); *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483, 486-487 (1980). The Fund statute, G. L. c. 175D, applies to all kinds of direct insurance, with certain exceptions not here relevant. *Id.* § 2.

Section 5 (1) (*a*) of c. 175D provides that the Fund shall "be obligated to the extent of the covered claims against the insolvent insurer . . . ."[3] Therefore, the Fund's maximum

---

[2] Although the parties do not include in their statement of agreed facts the fact that the plaintiffs first filed a claim and undertook negotiations with APIC, this was stated at oral argument.

[3] A "covered claim" is defined as "an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such

liability is $5,000 each to David and Mary Ellen, individually, or $10,000 to both for the accident, the limits of the Summit policy. Section 9 of the same chapter provides, in relevant part, that "[a]ny person having a claim against his insurer under any insolvency provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy."[4]

The filing of a claim by an injured person under the uninsured motorist provision of his own insurance policy is both proper and necessary under G. L. c. 175D, § 9, before recourse can be had to the Fund. See *Spearman* v. *State Security Ins. Co.*, 57 Ill. App. 3d 393, 395 (1978) (construing Ill. Rev. Stat. c. 73, § 1065.96 (1975), which is substantially similar to G. L. c. 175D, § 9). Accord, *State Farm Mut. Auto. Liab. Ins. Co.* v. *Kiser*, 168 N.J. Super. 230, 236 (1979), and cases cited therein.

The Fund argues that its liability under c. 175D is limited by the liability limits of the Summit policy, $5,000 per person and $10,000 per accident. It maintains that the second sentence of § 9, quoted above, requires that the $10,000 recovered by David be offset against these Summit policy limits, so that the Fund's total liability to David and Mary Ellen is zero. The plaintiffs would look to the Fund as a collateral source of recovery. They argue that David and

---

insurer becomes an insolvent insurer and (*a*) the claimant or insured is a resident of the commonwealth; and (*b*) the property from which the claim arises is permanently located in the commonwealth." G. L. c. 175D, § 1 (2), as amended by St. 1975, c. 570, § 1. The Vokeys were at all material times residents of Massachusetts and, as stated in the text, the Fund concedes that their claims are "covered claims."

[4] The plaintiffs concede that, had Summit not become insolvent, they could not have proceeded under the coverage U portion of their APIC policy, but instead would have been limited to recovering $5,000 per person and $10,000 for the accident, the liability limits of the Summit policy. Thus David has already recovered twice what he would have without the insolvency.

Mary Ellen have exhausted their rights[5] under coverage U, and that they may now seek recovery from the Fund to the extent of the Summit policy limits.

The plaintiffs' argument cannot stand. The purpose of the exhaustion requirement of the first sentence of § 9 is to render the Fund a source of last resort in the event of insolvency. The second sentence of § 9 states a clear legislative policy that any recovery to which a claimant is contractually entitled under his own insurance policy shall be offset to reduce the liability of the Fund.

This nonduplication of recovery provision, G. L. c. 175D, § 9, was taken from the National Association of Insurance Commissioners Post-Assessment Property and Liability Insurance Guaranty Model Act (hereinafter N.A.I.C. Model Act). See 2 Official N.A.I.C. Model Insurance Laws, Regulations and Guidelines § 12, at 540-8 (1977). Cases in other jurisdictions which have interpreted their nonduplication of recovery provisions from the N.A.I.C. Model Act have rejected collateral source arguments and have required offset of amounts recovered under uninsured motorist provisions of claimants' insurance policies. See *King* v. *Jordan*, 601 P.2d 273, 278 (Alas. 1979); *Lucas* v. *Illinois Ins. Guar. Fund*, 52 Ill. App. 3d 237, 239 (1977); *Prutzman* v. *Armstrong*, 90 Wash. 2d 118, 121-122 (1978). Cf. *Florida Ins. Guar. Ass'n* v. *Dolan*, 355 So. 2d 141, 142 (Fla. Dist. Ct. App. 1978) (availability of alternate source of recovery

---

[5] We note that David and Mary Ellen were represented throughout this litigation by the same law office. Presumably Mary Ellen could have recovered a pro rata share of the APIC settlement. The plaintiffs' attorney argues in his brief that either Mary Ellen had no right to recover under the APIC policy for loss of consortium, which is clearly incorrect on the basis of the portion of coverage U quoted in the text above, or "because [APIC's] payment to David S. Vokey of the full per-person limit of liability [under the APIC policy] exhausted the company's obligation to make payments on account of the damages sustained by both Vokeys as a result of the accident of August 12, 1973." The implicit assumption that payment to the husband is equivalent to payment to the wife is vestigial and archaic, and although this issue is not before us, we register our disapproval of the conduct of the litigation in this regard. Cf. *Brown* v. *Brown, ante* 231, 232 (1980).

places plaintiff's claim outside definition of "covered claim" because it is not "unpaid").

Although the statutes construed in *King* and *Lucas, supra,* contained provisions limiting the respective State funds' liability to the limits of the insolvent insurers' policies,[6] in addition to requiring exhaustion and offset to avoid duplicate recovery, both the *King* court and the *Lucas* court relied on the nonduplication of recovery provisions similar to G. L. c. 175D, § 9.[7] Washington does not have liability limits, and relied solely on its nonduplication of recovery provision.[8] See *Prutzman, supra.*

The absence of statutory liability limits in G. L. c. 175D does not negate the effect of § 9, which is to require exhaustion by claimants through their own insurance policies, and offset of amounts recovered against liability of the Fund (which, logically, is coextensive with that of the insolvent insurer).

We hold that the judge correctly allowed the defendant's motion to dismiss the plaintiffs' complaint.

*Judgment affirmed.*

---

[6] Alas. Stat. 21.80.100(a) (1978). Ill. Rev. Stat. c. 73, § 1065.84-3(i) (1975).

[7] The respective nonduplication of recovery provisions are Alas. Stat. 21.80.100 (1978) and Ill. Rev. Stat. c. 73, § 1065.96(a) (1975).

[8] Wash. Rev. Code 48.32.100(1) (1971).