MASSACHUSETTS INSURERS INSOLVENCY FUND *vs.* SAFETY
INSURANCE COMPANY.

Suffolk. March 6, 2003. - May 2, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Insurance,* Motor vehicle insurance, Construction of policy, Uninsured
motorist. *Statute,* Construction. *Massachusetts Insurers Insolvency Fund.*

An insured under a standard motor vehicle insurance policy who was struck
by a truck while sitting in his parked vehicle was not entitled to uninsured
motor vehicle benefits under his policy, where the truck that caused the ac-
cident was insured by its owner, but the operator of the truck was not
separately insured. [312-317]

CIVIL ACTION commenced in the Superior Court Department on
February 23, 2001.

The case was heard by *Allan van Gestel,* J., on motions for
summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Kevin M. Truland* for the defendant.

*David B. Mack (Joseph C. Tanski* with him) for the plaintiff.

*Michael P. Roche,* for Nichole Bruton, was present but did
not argue.

COWIN, J. Safety Insurance Company (Safety) appeals from
the grant of summary judgment to the plaintiff, the Mas-
sachusetts Insurers Insolvency Fund (Fund). On cross motions
for summary judgment, a judge in the Superior Court decided
that Safety was required to pay to its policyholder uninsured
motor vehicle benefits because the operator of the vehicle that
struck him was uninsured, even though the owner of that vehicle
carried insurance. Safety appealed and we granted its applica-
tion for direct appellate review. We reverse.

1. *Background.* These facts are not disputed. On August 9,

1999, Nichole Bruton, driving a U-Haul truck, struck Nigel Seale's parked vehicle, injuring Seale, who was sitting in his vehicle. We proceed on the premise that Bruton was legally responsible for the accident.[1] The U-Haul truck was owned by a third party and, at the time of the accident, was insured by Republic Western Insurance Company (Republic Western). This policy provided coverage for bodily injury for which operators of the U-Haul truck were legally responsible, to a limit of $20,000 a person. Bruton held a policy issued by Trust Insurance Company (Trust), which contained optional bodily injury liability coverage for causing bodily injury while driving a third party's vehicle, to a limit of $20,000 a person. Seale was insured under an automobile policy issued by Safety. This policy (sixth edition standard Massachusetts automobile insurance policy) provided uninsured motor vehicle (UM) coverage to a limit of $20,000 a person.

Seale first pursued the insurance of the U-Haul truck's owner, and demanded from Republic Western payment of the limit of that policy; Republic Western agreed to pay. Seale then pursued the insurance of Bruton, the operator, and demanded from Trust payment of the limit of the Trust policy. Trust, however, was subsequently adjudged to be insolvent by this court, effective August 2, 2000. By reason of G. L. c. 175D, the Fund became obligated to pay certain "covered claims"[2] under the Trust policy, subject to certain restrictions in the Fund's statute, G. L. c. 175D. See *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund*, 423 Mass. 165, 166-167 (1996). Seale therefore demanded payment from the Fund of the bodily injury claims that would have been covered under the Trust policy.

The Fund rejected Seale's claim. It reasoned as follows. The

---

[1]There is no stipulation to this effect, but the parties so proceed.

[2]The statute defines a "[c]overed claim" as: "an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (*a*) the claimant or insured is a resident of the commonwealth; or (*b*) the property from which the claim arises is permanently located in the commonwealth. 'Covered claim' shall not include any amount due any . . . insurer . . . ." G. L. c. 175D, § 1 (2).

exhaustion provision of G. L. c. 175D, § 9,[3] requires that claimants look first to available coverage provided by solvent insurers before resorting to the Fund (which stands in place of the insolvent carrier). *Vokey* v. *Massachusetts Insurers Insolvency Fund*, 381 Mass. 386, 389-390 (1980). Under the Safety policy, a vehicle responsible for an accident that is insured by an insolvent insurer is treated as "uninsured," triggering UM coverage. Because Trust was insolvent, the Fund reasoned, Seale was able to recover UM benefits under the Safety policy, and was required to do so by G. L. c. 175D, § 9. This, the Fund claimed, reduced the Fund's liability to zero, because of the second sentence of § 9, which states a rule of nonduplication of recovery. See *Vokey* v. *Massachusetts Insurers Insolvency Fund*, *supra* at 390. Because the Safety policy's UM limit was the same as Trust's optional bodily injury liability limit ($20,000), the Fund claimed it had no obligation to pay.

Seale then made demand on Safety for UM benefits. Safety denied coverage, stating that, because Republic Western insured the U-Haul truck and was not insolvent, UM benefits did not obtain.

The Fund then filed a complaint for a declaratory judgment under G. L. c. 231A, seeking declarations to the effect that UM coverage is available under the Safety policy and that the Fund has no obligation to pay. Safety counterclaimed, seeking a declaration that no UM coverage is available to Seale.[4] The Fund and Safety filed cross motions for summary judgment.[5] The judge allowed the Fund's motion and denied Safety's. The judge reasoned that UM benefits are available if either the owner *or* operator legally responsible is uninsured, and Bruton is treated as uninsured because of Trust's insolvency. Thus, ac-

---

[3]"Any person having a claim against his insurer under any insolvency provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy." G. L. c. 175D, § 9.

[4]There are cross claims that need not be detailed. Seale sought a declaration that uninsured motor vehicle (UM) benefits are available, and Safety crossclaimed against both Seale and Bruton, seeking a declaration that no UM benefits are available.

[5]Seale supported the Fund's position. Bruton did not respond to the summary judgment motions. Neither Seale nor Bruton has appealed.

cording to the judge, UM coverage was available and the Fund's liability is reduced to zero by the set-off provision in G. L. c. 175D, § 9.

2. *Discussion.* The issue in this case is whether an injured party is entitled to UM benefits under his automobile insurance policy when the vehicle that caused the accident is insured by the owner, but the operator of that vehicle is not separately insured.[6] See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982) (responsibility for construing language of insurance policy is for trial judge and reviewing court).

The policy at issue is the standard policy. Its language is controlled by the Commissioner of Insurance. Thus, the UM provision is not construed against the insurance company, but in conformity with the statute, G. L. c. 175, § 113L, which dictates its content. *Murphy* v. *Safety Ins. Co.*, 429 Mass. 517, 522 n.6 (1999). We interpret the policy according to the "fair meaning of the language used, as applied to the subject matter." *Davis* v. *Allstate Ins. Co.*, 434 Mass. 174, 179 (2001), quoting *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984). The UM provision in the Safety policy (Part 3), states, in relevant part:

"Part 3. Bodily Injury Caused By An Uninsured Auto

"Sometimes an owner or operator of an auto legally responsible for an accident is uninsured. Some accidents involve unidentified hit-and-run autos. Under this Part, we will pay damages for bodily injury to people injured or killed in certain accidents caused by uninsured or hit-and-run autos. We will pay only if the injured person is legally entitled to recover from the owner or operator of the uninsured or hit-and-run auto. . . . Sometimes the company insuring the auto responsible for an accident will . . . become insolvent. We consider such an auto to be uninsured for purposes of this Part. . . ."

The portion of the statute requiring UM coverage, G. L. c. 175, § 113L (1), states, in relevant part:

---

[6]We do not consider the reverse situation in which the carrier of the policy insuring the vehicle through the vehicle's *owner* is insolvent but the operator is insured by a solvent carrier.

"No policy shall be issued or delivered . . . unless [it] provides coverage [in stated amounts] under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . and . . . such coverage shall include an insured motor vehicle where the liability insurer thereof [is insolvent]."

We conclude that both the statute and the Safety policy contemplate that UM benefits apply only when the *motor vehicle* is uninsured. Under the statute, UM benefits must be provided when (1) the insured is legally entitled to recover damages for certain injuries from the owner or operator of a motor vehicle and (2) the motor vehicle responsible for the accident is uninsured.

The judge erred when he construed the word "uninsured" to modify "owner or operator." It describes the vehicle. Section 113L refers unambiguously to "uninsured *motor vehicles*" and "insured *motor vehicle[s]*" (emphases added). Similarly, the Safety policy statement that UM benefits will be provided only if the injured party is legally entitled to recover from the owner or operator of an "uninsured . . . *auto*," speaks of the "company insuring the *auto*" becoming insolvent, and states that it considers "such an *auto*" to be uninsured (emphases added). The first sentence of the Safety policy's UM provision, which speaks of an owner or operator's being uninsured, contains the only language supporting the Fund's position. This is an inartful shorthand reference to uninsured vehicles. The "fair meaning" of this part of the policy, read as a whole and in the context of the insurance scheme in Massachusetts, makes this abundantly clear.

Massachusetts requires the insurance of *motor vehicles*. E.g., G. L. c. 90, § 1A (requiring liability insurance before vehicle registration); § 3 (vehicles owned by non-residents); § 34C (single policy covering more than one vehicle); § 34D (deposit of cash in lieu of liability bond or policy); § 34H (revocation of registration on cancellation of insurance policy); § 34J (penalizing operating an uninsured *vehicle*); § 34O (property damage liability coverage); § 34P (seizure of registration plates of

uninsured vehicles). By contrast, one may obtain and renew a driver's license without submitting evidence of insurance. See G. L. c. 90, § 8. Insurance coverage operates primarily with respect to *motor vehicles*. To a certain, limited extent, compulsory insurance "travels with" the policyholder, protecting the holder even when he or she is not driving the vehicle for which the insurance was purchased.[7] The policyholder may opt to expand this coverage.[8] Nevertheless, it remains the motor vehicle that must be insured, rather than the operator.

The 1959 Report of the Special Commission Relative to the Motor Vehicle Laws and the Insurance Laws as They Relate to Motor Vehicles, which both Safety and the Fund cite, contemplated the effect of changing the laws to insure the individual driver instead of the vehicle.[9] 1959 Senate Doc. No. 466, at 120-121. The commission declined to make a recommendation, as it considered the change to be "a proposal so revolutionary in concept and in practice that it should be made the basis of an entirely separate study." *Id.* at 121. See *Woodman* v. *Hartford Acc. & Indem. Co.*, 27 Mass. App. Ct. 1120 (1989).

It is true, as the Fund notes, that St. 1968, c. 643, § 5, which inserted G. L. c. 175, § 113L, was entitled, "An Act . . . requiring compulsory insurance coverage for damages caused by uninsured *motorists*" (emphasis added). But this tells only part of the story. When UM coverage first became available in the Commonwealth the statute's title referred to "operators of

---

[7]For instance, Part 2 of the Safety policy, which governs compulsory "Personal Injury Protection" benefits, protects the policyholder and household members if injured while occupying a vehicle that does not have Massachusetts compulsory insurance. See G. L. c. 90, § 34A (defining "[p]ersonal injury protection").

[8]For example, Part 5 of the Safety policy, which governs optional bodily injury coverage, compensates "people injured or killed in accidents" if the policyholder or a member of his household is legally responsible for the accident. In fact, it was this optional provision in the Trust policy that covers Bruton's operation of the U-Haul truck. *Gleed* v. *Aetna Cas. & Sur. Co.*, 418 Mass. 503, 508-509 & n.5 (1994) (Part 5 generally covers permissive use of third party's vehicle).

[9]We acknowledge that automobile insurance law in the Commonwealth has substantially changed since 1959, with the advent of "no-fault" insurance. The point made above, however, remains relevant.

uninsured *motor vehicles*" (emphasis added).[10] See St. 1966, c. 260. See also St. 1980, c. 532. "[A]lthough the title of an act is often helpful in interpreting the body of a statute, it is not conclusive." *Baldiga* v. *Board of Appeals of Uxbridge*, 395 Mass. 829, 835 (1985). Throughout the various iterations and recodifications of the UM statute, the Legislature has used "uninsured motorist" and "uninsured motor vehicle" interchangeably. The statute has even oscillated between these. Thus, what was "uninsured motor vehicles" in St. 1968, c. 643, § 5, became "uninsured motorists" in St. 1980, c. 532, § 2, and reverted to "uninsured motor vehicles" in St. 1988, c. 273, § 46, which is how it remains today. In fact, the present statute uses "uninsured motor vehicle," at times, see G. L. c. 175, § 113L (1) & (2), "[u]ninsured motorists," at another time, see G. L. c. 175, § 113L (5). We, too, have used both terms interchangeably. Compare *Hanover Ins. Co.* v. *Pascar*, 421 Mass. 442, 444 n.4 (1995) (uninsured motor vehicle coverage); *Forrest* v. *Hartford Acc. & Indem. Co.*, 367 Mass. 106, 107 (1975) (same) with *Berger* v. *H.P. Hood, Inc.*, 424 Mass. 144, 150 (1997) (uninsured motorist coverage); *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 141-142 (1994) (same). This merely reflects the paradigm of an operator who is also the owner of the vehicle. Moreover, the terms of the standard policy itself reflect that, generally, compulsory insurance covers the owner and those operating the vehicle with the owner's consent. Nonetheless, these words do not alter the structure of the insurance scheme the Legislature established: it is the *vehicle* that must be insured.

We reject the Fund's argument that G. L. c. 175D, § 9 (see note 3, *supra*) bars Seale from recovering from the Fund. That statute, which requires exhaustion of other policies before recovery from the Fund, is inapplicable. See *Vokey* v. *Massachusetts Insurers Insolvency Fund*, 381 Mass. 386, 389-390 (1980). The exhaustion requirement applies only when a person has a claim against his insurer. Here, because the U-Haul truck was insured by a solvent insurer, Republic Western, Seale has

---

[10]Statute 1966, c. 260, inserted G. L. c. 90, § 34L. The UM provision (with amendments) was later recodified at G. L. c. 175, § 113L. St. 1968, c. 643, §§ 5 and 6.

no claim for UM coverage. The Fund also argues that Seale's claim is not a "[c]overed claim" under G. L. c. 175D, § 1 (2) (see note 2, *supra*) because payment by the Fund would benefit another insurer (Safety), relieving it of an obligation. This is not so. Safety is not relieved of an obligation; it had none. An interpretation of G. L. c. 175D that would automatically shift liability from the Fund to the nearest solvent insurer would do violence to the legislatively established scheme. Cf. *Dufresne's Case*, 51 Mass. App. Ct. 81, 87-88 (2001) (workers' compensation insurer not entitled to offset settlement monies that included assets from the Fund); *Ferrari v. Toto*, 9 Mass. App. Ct. 483, 484-486 (1980), *S.C.*, 383 Mass. 36, 37-38 (1981) (no liability on Fund because any payment would go not to plaintiffs but to workers' compensation insurer).

The Fund suggests that our interpretation renders less protection to persons in the case of insolvent insurers than in the case of unidentified vehicles. This is not correct. A person in Seale's position remains protected; he simply must look to the Fund to recover rather than to his UM benefits. It is true that Seale would have been able to recover UM benefits had Bruton fled the scene, and therefore been "unidentified," but such is the nature of hit-and-run accidents. Seale would not have recovered from the owner's insurer in that case. Thus, he may in fact be better off now that he can recover from *two* "legally responsible" entities, the owner and the operator. "However, the statute and the policy prescribed by it . . . are clear." *Alguila v. Safety Ins. Co.*, 416 Mass. 494, 499 (1993). Any argument about "irrational outcomes" must be addressed to the Legislature. See *id.*

The result reached here does not conflict with G. L. c. 175, § 113L (4).[11] That section essentially entitles the UM carrier to recover amounts the insured received from legally responsible persons, in certain circumstances. The Fund is correct that this

---

[11]General Laws c. 175, § 113L (4), reads, in pertinent part:

"In the event of payment to any person under the coverage provided by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer; provided, however, that

provision contemplates situations in which UM benefits are available even though the insured has partially recovered from another source. Our interpretation does not conflict with § 113L (4). If, for example, an insured were to recover from the personal assets of an uninsured tortfeasor, his UM carrier may have a claim for setoff or reimbursement.

3. *Conclusion.* In cases where the legally responsible operator of a motor vehicle is not the owner of that vehicle, the relevant inquiry for applicability of UM benefits is whether the *motor vehicle* was insured. In this case, the U-Haul truck *was* insured by Republic Western. No UM benefits were available.

The judgment is vacated. A declaration shall enter that no UM coverage is available under the Safety policy.

*So ordered.*

---

. . . the insurer shall not be entitled to any such proceeds unless and until the person insured . . . has received full compensation for his injuries . . . ."