# NORFOLK & DEDHAM MUTUAL FIRE INSURANCE COMPANY *vs.* ANNE P. QUANE & others[1]; LORE H. MAHONEY, third-party defendant.

Norfolk. September 8, 2004. - October 22, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Insurance,* Construction of policy, Motor vehicle insurance, Uninsured motorist, Insolvency of insurer, Underinsured motorist.

Where the defendant, who had been injured in a motor vehicle accident involving two other vehicles, sought uninsured motor vehicle benefits as a covered household member under an insurance policy issued by the plaintiff after having received the policy limits under one tortfeasor's insurance policy and after the other tortfeasor's insurer had been deemed insolvent, the plaintiff was obligated to provide the defendant with such benefits, pursuant to the plain terms of its policy and the clear language of G. L. c. 175, § 113L, for injuries for which he had not been fully compensated. [707-712]

CIVIL ACTION commenced in the Superior Court Department on April 20, 2001.

The case was heard by *Elizabeth B. Donovan*, J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Kevin M. Truland* (*Ralph C. Sullivan* with him) for the plaintiff.

*David B. Mack* for Massachusetts Insurers Insolvency Fund.

SPINA, J. In these declaratory judgment actions under G. L. c. 231A, we consider the relative obligations of Norfolk & Dedham Mutual Fire Insurance Company (Norfolk & Dedham) and the Massachusetts Insurers Insolvency Fund[2] (Fund) to

---

[1]Eugene Quane and Massachusetts Insurers Insolvency Fund, intervener.

[2]The Fund is a legal entity created by statute to pay covered claims (up to $300,000 per claim) against insolvent insurers. See G. L. c. 175D, §§ 3, 5 (1) (*a*); *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund*, 423 Mass.

compensate Eugene Quane (Quane), in excess of a settlement that he received from another insurer, for injuries he sustained in a motor vehicle accident. On cross motions for summary judgment, a judge in the Superior Court allowed the Fund's motion and denied Norfolk & Dedham's motion. We granted Norfolk & Dedham's application for direct appellate review. At issue is whether the judge erred in concluding that uninsured motor vehicle benefits were available to Quane under the terms of a Norfolk & Dedham policy, in light of the fact that one tortfeasor's insurer had been declared insolvent, where Quane had already received a settlement from the other tortfeasor's insurer. We affirm.

The facts are not in dispute. On May 28, 1999, Quane was involved in a three-vehicle accident on Route 128 near Dedham. He was a covered household member under a standard Massachusetts automobile liability insurance policy, sixth edition, issued to his wife, Anne P. Quane, by Norfolk & Dedham for the period from October 21, 1998, to October 21, 1999. The second vehicle involved in the accident was operated by Karen Opat and was insured by Hanover Insurance Company (Hanover). The third vehicle was operated by Lore Mahoney and was insured by Trust Insurance Company (Trust). For our purposes, the parties agree that Opat and Mahoney were at fault in the accident and, thus, were jointly responsible for the injuries sustained by Quane.

Quane asserted a claim under the bodily injury provision of the Hanover policy, covering those injuries for which Opat was legally responsible, and was paid the policy limit of $50,000 in settlement of his claim. Because, as alleged by Quane, this settlement did not fully compensate him for his injuries,[3] he sought additional payment from the Trust policy, covering those

165, 166-167 (1996). A "[c]overed claim" is an unpaid claim, subject to certain limitations, made pursuant to a policy issued by an insurer "which has become an insolvent insurer." G. L. c. 175D, § 1 (2).

[3]Quane alleged the following injuries: broad based ventral disc protrusions, acute lumbar strain, and emotional distress. Having been self-employed as a tile setter, Quane further alleged that, due to sharp lower back pain, he was unable to lift and carry tile and heavy objects to the same extent as prior to the accident, resulting in lost earnings. It was his understanding that these injuries were likely permanent and might require surgery.

injuries for which Mahoney was legally responsible and having a bodily injury limit of $100,000. However, as of August 2, 2000, Trust was deemed insolvent by the Supreme Judicial Court for Suffolk County, obligating the Fund to pay certain covered claims arising out of and within the coverage of insurance policies issued by Trust, subject to the provisions of G. L. c. 175D. See note 2, *supra.*

On December 14, 2000, Quane asserted a claim for uninsured motor vehicle benefits as a covered household member under the Norfolk & Dedham policy issued to his wife. Pursuant to that policy, a vehicle responsible for an accident that is insured by an insurer which becomes insolvent is treated as "uninsured," triggering uninsured motor vehicle coverage. The limits for such coverage under the Norfolk & Dedham policy were $20,000 per person and $40,000 per accident. Norfolk & Dedham denied Quane's claim on the ground that his receipt of $50,000 from Hanover precluded his recovery of additional benefits.

On April 20, 2001, Norfolk & Dedham filed an action for declaratory relief in the Superior Court, seeking a determination of its obligation to provide Quane with uninsured motor vehicle benefits pursuant to the terms of its policy. It requested a judgment that no such benefits were available to Quane because he had already received bodily injury liability benefits from Hanover. The Fund filed a motion to intervene in the action, pursuant to Mass. R. Civ. P. 24, 365 Mass. 769 (1974), which was allowed.[4] The Fund then filed a counterclaim for declaratory judgment against Norfolk & Dedham, and a cross claim for declaratory judgment against the Quanes, seeking declarations that (1) Norfolk & Dedham had an obligation to pay Quane uninsured motor vehicle benefits under the terms of its policy prior to the Fund's having any obligation to Quane pursuant to G. L. c. 175D; and (2) the Fund was entitled to reduce any amount it paid Quane pursuant to Trust's policy by the amount of the uninsured motor vehicle limit in the Norfolk & Dedham policy.[5]

---

[4]The Fund also filed a third-party complaint for declaratory judgment against Mahoney.

[5]General Laws c. 175D, § 9, provides, in relevant part: "Any person having

Norfolk & Dedham and the Fund filed cross motions for summary judgment. In allowing the Fund's motion and denying Norfolk & Dedham's motion, the judge concluded that Norfolk & Dedham plainly had an obligation to provide uninsured motor vehicle benefits to Quane under the terms of its policy where Trust, the insurer of a responsible party, Mahoney, had been deemed insolvent. The fact that Quane had already recovered $50,000 from Hanover did not relieve Norfolk & Dedham of its responsibility to provide coverage in these circumstances. The judge further opined that the Fund had no obligation to Quane until he had exhausted his rights under the Norfolk & Dedham policy, and that any amount paid to Quane by the Fund should be reduced by the $20,000 uninsured motor vehicle limit of that policy.

The interpretation of an insurance contract is a question of law for the trial judge and the reviewing court. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). The terms of an insurance policy will be interpreted according to the "fair meaning of the language used, as applied to the subject matter." *Davis* v. *Allstate Ins. Co.*, 434 Mass. 174, 179 (2001), quoting *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984). Because the policy at issue is the standard Massachusetts automobile insurance policy, its language is controlled by the Commissioner of Insurance. See *Massachusetts Insurers Insolvency Fund* v. *Safety Ins: Co.*, 439 Mass. 309, 312 (2003). Thus, the uninsured motor vehicle provision is not construed against Norfolk & Dedham, but in conformity with the relevant statute, G. L. c. 175, § 113L, which dictates its content. See *id.*; *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 140 (1994).

The thrust of Norfolk & Dedham's argument is that, pursuant

a claim against his insurer under any insolvency provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy." See *Vokey* v. *Massachusetts Insurers Insolvency Fund*, 381 Mass. 386, 389-390 (1980) (exhaustion provision of G. L. c. 175D, § 9, requires claimant to seek available coverage from solvent insurer before resorting to Fund).

to the applicable language of G. L. c. 175, § 113L, Quane does not qualify for uninsured motor vehicle coverage under its policy because he already received bodily injury liability insurance from one of the tortfeasors, Opat, through her insurer, Hanover. In other words, Norfolk & Dedham contends that the unavailability of *any* insurance is a prerequisite to its obligation to provide uninsured motor vehicle benefits to Quane. We conclude that Norfolk & Dedham's position is contrary to the plain language of its policy and G. L. c. 175, § 113L.

Part 3 of the Norfolk & Dedham policy, pertaining to "Bodily Injury Caused By An Uninsured Auto," provides, in relevant part:

> "Under this Part, [Norfolk & Dedham] will pay damages for bodily injury to people injured or killed in certain accidents caused by uninsured or hit-and-run autos. We will pay only if the insured person is legally entitled to recover from the owner or operator of the uninsured or hit-and-run auto. . . . Sometimes the company insuring the auto responsible for an accident will deny coverage or become insolvent. We consider such an auto to be uninsured for purposes of this Part."

Because Trust was deemed to be insolvent by a court of competent jurisdiction, Mahoney's vehicle was "uninsured" pursuant to the explicit language of the policy. Thus, the prerequisites to Norfolk & Dedham's obligation to provide Quane with uninsured motor vehicle benefits were satisfied — Quane was a covered household member on his wife's policy, an issue not contested by the parties, and the vehicle driven by a legally responsible person, Mahoney, was insured by a company that became insolvent, thereby rendering such automobile "uninsured." Significantly, although Quane's claim against Hanover was settled for the full policy limit of $50,000, he has alleged that he was still not fully compensated for his injuries. The Norfolk & Dedham policy does not condition a claimant's recovery of uninsured motor vehicle benefits on the absence of any other source of recovery in such circumstances. We will not read into the standard policy additional conditions or restrictions on the recovery of benefits that the Commissioner of Insurance declined to include in the first instance.

The language of G. L. c. 175, § 113L, supports our conclusion. Cf. *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 173 (1981) (where policy language conflicts with statute, provision not enforceable). It states, in relevant part:

> "No policy shall be issued or delivered in the commonwealth . . . unless [it] provides coverage [in stated amounts] under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . and . . . such coverage shall include an insured motor vehicle where the liability insurer thereof is unable to make payment . . . because of insolvency."

G. L. c. 175, § 113L (1). "The aim of the uninsured motorist statute is to minimize the catastrophic financial loss for victims of automobile accidents caused by the negligence of uninsured tortfeasors." *Surrey* v. *Lumbermens Mut. Cas. Co.*, *supra* at 177. This statutory language in no way precludes recovery of uninsured motor vehicle benefits from a second tortfeasor where an injured claimant has been paid the bodily injury liability limit of the first tortfeasor, but not fully compensated for his injuries. If the Legislature had wanted to impose such a restriction in situations where there are joint tortfeasors, it would have inserted appropriate language to that effect. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999), and cases cited (court will not read into statute provision omitted by Legislature, whether by inadvertence or design). See also *Surrey* v. *Lumbermens Mut. Cas. Co.*, *supra* at 176. It is wholly inconsistent with the broad remedial purpose of G. L. c. 175, § 113L, "to permit the insurer to evade mandated coverage by erecting an artificial, arbitrary barrier to recovery." *Id.* at 177.

The language of G. L. c. 175, § 113L (4), in fact, suggests that the Legislature rejected the type of limitation that Norfolk & Dedham now seeks to impose on Quane. That section essentially provides that an insurance carrier who has paid uninsured motor vehicle benefits may recover, in certain circumstances, amounts received by the insured from legally

responsible persons.[6] See *Massachusetts Insurers Insolvency Fund* v. *Safety Ins. Co., supra* at 317 (statutory provision "contemplates situations in which [uninsured motor vehicle] benefits are available even though the insured has partially recovered from another source"). However, the insurer's right to such recovery is explicitly conditioned on the insured's being *fully* compensated for his injuries.[7] In other words, G. L. c. 175, § 113L (4), expressly contemplates that an injured insured may receive partial recovery from other sources and still be entitled to recover uninsured benefits. That is precisely the situation alleged by Quane, as full compensation for his injuries has not yet occurred.

To bolster its argument that it would nevertheless be contrary to the intent of G. L. c. 175, § 113L, to permit Quane to recover uninsured motor vehicle benefits where he has already received a $50,000 payment from Hanover, Norfolk & Dedham erroneously relies on cases involving underinsured, rather than uninsured, motor vehicle coverage. See *Murphy* v. *Safety Ins. Co.*, 429 Mass. 517, 521 (1999); *Hanover Ins. Co.* v. *Pascar*, 421 Mass. 442, 445-446 (1995). Pursuant to Massachusetts law, uninsured motor vehicle coverage, which is mandatory, is separate and distinct from underinsured motor vehicle coverage,

---

[6]General Laws c. 175, § 113L (4), provides, in pertinent part:

"In the event of payment to any person under the coverage provided by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer; provided, however, that . . . the insurer shall not be entitled to any such proceeds unless and until the person insured . . . has received full compensation for his injuries . . . ."

[7]Consistent with G. L. c. 175, § 113L (4), an analogous right of recovery is embodied in the Norfolk & Dedham policy but, again, only where the insured has been fully compensated. Part 3 of the policy states, in relevant part, that "[Norfolk & Dedham] will reduce the damages an injured person is entitled to recover by . . . [t]he amount recovered from any legally responsible person provided the injured person is fully compensated for his or her damages for bodily injury."

which is optional. See G. L. c. 175, § 113L (1), (2). The combined resources of multiple tortfeasors should be examined in those instances when a claimant seeks to recover underinsured motor vehicle benefits. See G. L. c. 175, § 113L (2); *Hanover Ins. Co.* v. *Pascar, supra.* Part 12 of the Norfolk & Dedham policy, pertaining to "Bodily Injury Caused By An Underinsured Auto," states, in relevant part:

> "Such injured person has a claim under this Part when the limits for automobile bodily injury liability insurance covering the owners and operators of the legally responsible autos are:
>
> "1. Less than the limits shown for this Part on your Coverage Selections Page; and
>
> "2. Not sufficient to pay for the damages sustained by the injured person."

Part 12 further provides that Norfolk & Dedham "will reduce the damages an injured person is entitled to recover by . . . [t]he total amount collected from the automobile bodily injury liability insurance covering the legally responsible owners and operators of all insured autos." Thus, under G. L. c. 175, § 113L (2), and the Norfolk & Dedham policy, underinsured motor vehicle coverage mandates a comparison of the underinsured motor vehicle limits of the claimant's policy with the bodily injury limits of all of the tortfeasors' policies. See *Alguila* v. *Safety Ins. Co.,* 416 Mass. 494, 496-497 (1993). No such comparison is required with respect to the provision of uninsured motor vehicle coverage pursuant to either G. L. c. 175, § 113L (1), or the Norfolk & Dedham policy.[8]

We thus conclude that Norfolk & Dedham is obligated to provide Quane with uninsured motor vehicle benefits, pursuant to the plain terms of its policy and the clear language of G. L. c. 175, § 113L, for injuries that he sustained in the accident and for which he has not been fully compensated. That conclusion in turn determines the Fund's obligation to Quane, which flows

---

[8]Analysis of cases from other jurisdictions, cited by Norfolk & Dedham, is not necessary to resolve the issue at hand where the plain and unambiguous language of the policy and of G. L. c. 175, § 113L, dictate our conclusion.

from the plain language of G. L. c. 175D, § 9. See note 5, *supra*. Once Trust was deemed to be insolvent, Quane was entitled to compensation from the Fund only after he had fully exhausted his right to benefits under the Norfolk & Dedham policy. See G. L. c. 175D, § 9; *Vokey* v. *Massachusetts Insurers Insolvency Fund*, 381 Mass. 386, 389-390 (1980). Because the Fund is a limited source of compensation created for the protection of policyholders against insolvent insurers, see *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund*, 373 Mass. 798, 804 (1977), the Fund cannot become obligated to pay those claims for which solvent insurers, like Norfolk & Dedham here, are properly responsible.

*Judgment affirmed.*