van Gestel, Allan, J.
These matters come before the Court on cross motions for summary judgment by the plaintiff in each case, Massachusetts Insurers Insolvency Fund (the “Fund”), and by the defendants, Premier Insurance Company (“Premier”) in cases Nos. 04-4581 BLS and 04-5250 BLS, and Hanover Insurance Company (“Hanover”) in case No. 04-5251 BLS. There are three other defendants in addition to Premier in case No. 04-4581 BLS: Michelle Cote, Michael Carbone and the City of Fitchburg. None of these latter defendants seem to have joined in or responded to the cross motions.
The complaints present issues between the Fund, on the one hand, and Premier and Hanover, on the other. The cases result from the insolvency of Legion Insurance Company (“Legion”) and its effect on uninsured motorist coverage (“UM”) provided by Premier and Hanover. At issue in all three cases is a section in the Seventh Edition of the Massachusetts Auto Policy relating to motor vehicles owned by municipalities.
The facts are not really in dispute. Rather, the matters present and involve statutory and contractual interpretation by the Court.

BACKGROUND

The Fund, based in Boston, “is a nonprofit unincorporated entity created by G.L.c. 175D, sec. 3 (1994 ed.).” Clark Equipment Co. v. Massachusetts Insurers Insolvency Fund, 423 Mass. 165, 167 (1996). G.L.c. 175D is patterned on the Post-Assessment Insurance Guaranty Association Model Bill. Id. at 167 n.2.
The Fund is obligated to pay “covered claims” against an insolvent insurer in place of the insolvent insurer. “The Fund’s obligations and expenses are assessed to a broad range of insurers, including all liability and properly insurers who write insurance in the Commonwealth... . Insurers recoup the amounts which they pay into the fund by increasing their rates and premiums . . . The cost of paying claims against insolvent insurers ‘is thus ultimately passed on to the insurance-buying public.’ ” Id. at 167.
Premier and Hanover are Massachusetts corporations with their principal places of business in Massachusetts. Their business is that of automobile insurers licensed to transact insurance business in Massachusetts.
Under Massachusetts law, cities and towns are exempt from purchasing compulsory automobile insurance. Unlike other vehicle owners, cities and towns are not compelled to purchase such insurance as a condition of registering their vehicle. See G.L.c. 90, sec. 1A; 1963 Opinion of the Attorney General 239. Nevertheless, some municipalities — like Brain-tree, Lynn and Fitchburg here — opt to purchase insurance for their vehicles.
There are three separate motor vehicle accidents involved, one in each case. There is no dispute, however, that, in the instance of each accident, the claimants may be entitled to UM benefits by either a Premier or a Hanover policy; three different Massachusetts municipalities (Braintree, Lynn and Fitchburg) were the owners of the vehicles charged with liabiliiy for the accidents; each of the three municipalities purchased motor vehicle insurance from Legion; after the accidents Legion was declared insolvent by the Commonwealth Court of Pennsylvania; each of the claimants brought claims against either Premier or Hanover for UM benefits; and each claim was denied on the grounds that motor vehicles involved were owned by a governmental unit and, as such, are not considered to be uninsured.
Each of the Premier and Hanover policies contains the language of the standard Massachusetts Auto Policy, Seventh Edition, in Part 3, Page 8, approved by the Commissioner of Insurance, that reads, in material part as follows:
Sometimes an owner or operator of an auto legally responsible for an accident is uninsured . . . Under this Part, we will pay damages for bodily injury to people injured or killed in certain accidents caused by an uninsured . . . auto. We will pay only if the injured person is legally entitled to recover from the owner or operator of the uninsured . . . auto . . . Sometimes the company insuring the auto responsible for an accident will. . . become insolvent. We consider such an auto to be uninsured for purposes of this Part. However, we do not consider anauto owned by a governmental unit... to be an uninsured auto. (Emphasis added.)
*46 It is the emphasized portion of the standard policy language on which Premier and Hanover rely in denying the claims here.
Legion was determined to be insolvent on July 28, 2003. As provided in c. 175D, by reason of the insolvency of Legion, the Fund became obligated to pay certain “covered claims” arising out of and within the coverage of the Legion insurance policies.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’[2] Insolvency Fund, 424 Mass. 275, 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.RCiv.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Here, there are dueling motions, such that each of the Fund, Premier and Hanover, although for quite different reasons, argue that there are no material facts in dispute and their respective motions should be allowed. The Fund claims that the Court can, and should, rule in its favor, based solely upon an interpretation of the statutory and contractual language and the setting in which it exists. Premier and Hanover make the same argument, but urge a contrary result.
The Court begins its analysis of the merits of the Fund’s position by examining the statutory powers granted to the Fund by G.L.c. 175D, sec. 5(l)(a) and (b):
(1) The Fund shall:
(a) be obligated to the extent of the covered claims against the insolvent insurer existing prior to the declaration of Insolvency and arising within sixty days after the declaration of insolvency . . . but such obligation shall include only that amount of each covered claim which ... is less than three hundred thousand dollars.
(b) be deemed the insurer to the extent of its obligations on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent; . . .
The definition of a “covered claim” found in sec. 1(2) of c. 175D is: “an unpaid claim . . . which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (a) the claimant or insured is a resident of the commonwealth; or (b) the properly from which the claim arises is presently located in the commonwealth.”
Section 9 of c. 175D modifies the extent of the Fund’s obligations regarding a covered claim. It provides that:
Any person having a claim against his insurer under any insolvency provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant’s insurance policy . . .
Statutory interpretation presents a question of law for the Court to decide. Annese Elec. Services, Inc. v. City of Newton, 431 Mass. 763, 767 (2000). In so doing, the primary duty of a judge is to give effect to the Legislature’s intent. Pielech v. Massasoit Greyhound, Inc., 423 Mass. 534, 539 (1996); Callan v. Winters, 404 Mass. 198, 202 (1989); Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). The legislative intent must be ascertained from all of a statute’s words, construed by ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished. Acting Superintendent of Bournewood Hospital v. Baker, 431 Mass. 101, 104 (2000); Bombardieri v. Registrar of Motor Vehicles, 426 Mass. 371, 374 (1998).
In determining the legislative intent behind a particular provision, the Court may also look to relevant provisions in other parts of the statute. Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283-84 (1991). Also, the Court ought to apply the plain language used in the statute when that language is unambiguous. ROPT, Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000); Crenshaw v. Macklin, 430 Mass. 633, 634 (2000); Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82 (1999). Sound judgment and common sense must be applied so as to make a statute an effectual piece of legislation. Sun Oil Co. v. Director of Division of Necessaries of Life, 340 Mass. 235, 238 (1960).
Similar legal principles apply to the construction of insurance policies. The “fair meaning of the language used, as applied to the subject matter” is the approach that should be taken. Davis v. Allstate Ins. Co., 434 Mass. 174, 179 (2001). See also Ruggerio Ambulance Service, Inc. v. National Grange Insurance Company, 430 Mass. 794, 797 (2000); Metropolitan Property & Casualty Insurance Company v. Santos, 55 Mass.App.Ct. 789, 791 (2002).
The Fund itself is a
“statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer.” Commissioner of Ins. v. Massachusetts Insurers Insolvency Fund, 373 Mass. 798, 799 (1977). The [Fund] is, in essence, simply a conduit to which certain non-insolvent insurers, authorized to do business in the Commonwealth, pay a pro rata amount to enable the [Fund] to pay “covered claims” to insureds whose insurance companies become insolvent subsequent to the issuance of their policies and claims. *47 G.L.c. 175D. The nature of the transaction and the activity engaged in is the payment of “covered claims,” and transactions are motivated by legislative mandate, not business or personal reasons.
Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 776-77 (1992). Thus, the Fund is not an insurer, as such.
The Fund is “obligated to the extent of the covered claims.” The “covered claims” are claims “which arise[] out of and [are] within the coverage of an insurance policy” of an insolvent insurer. Massachusetts Insurers Insolvency Fund v. Safety Insurance Company, 439 Mass. 309, 310-11 (2003).
Section 9 of c. 175D, quoted above, limits the extent of the Fund’s obligations regarding covered claims by requiring the exhaustion of the UM coverage under any other policy providing such coverage to the claimants here. It is not challenged that the Premier and Hanover policies may provide UM coverage for some claims triggered by the insolvency of Legion. Id. at 311. See Vokey v. Massachusetts Insurers Insolvency Fund, 381 Mass. 386, 389 (1980). But Premier and Hanover assert that the specific policy language involved here, approved by the Commissioner, excludes any coverage for autos owned by governmental entities.
“The purpose of the exhaustion requirement of the first sentence of sec. 9 is to render the Fund a source of last resort in the event of an insolvency.” Id. at 390. The claimants, therefore, must first exhaust their UM claims against the Premier and Hanover policies, unless such coverage is not available because of the policy language.
A part of G.L.c. 175, found in sec. 113L(1), which relates to UM coverage, warrants consideration. This part reads, in material part, as follows:
No policy shall be issued or delivered . . . unless [it] provides coverage [in stated amounts] under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . and . . . such coverage shall include an insured motor vehicle where the liability insurer thereof [is insolvent].
See Safety Insurance Company, supra, 439 Mass. at 313.
The Court, of course, should not read language into a policy that is not already there.
When an insolvency occurs, however, G.L.c. 175D alters the rules which might otherwise be applicable if the insurers involved were solvent. The rights and obligations of involved parties must be determined taking into account the policy language and the legislative intent as expressed in the governing statutes.
The policy at issue is the standard policy. Its language is controlled by the Commissioner of Insurance. Thus, the UM provision is not construed against the insurance company, but in conformiiy with the statute, G.L.c. 175, sec. 113L, which dictates its content. . . We interpret the policy according to the “fair meaning of the language used, as applied to the subject matter.”
Safety Insurance Company, supra, 439 Mass. at 312.
Thus, this Court must now determine the “fair meaning” of the key policy language, “read as a whole and in the context of the insurance scheme in Massachusetts.” Id. at 313.
The sentence involved is not complex. The key words are: “we do not consider an auto owned by a government unit... to be an uninsured auto.” The Fund essentially argues that words like “unless that auto is insured and the insurer has become insolvent” must be read into policy language that has been used and approved by the Commissioner of Insurance for over 20 years. This Court should not do that when “the statute and the policy prescribed by it are clear.” Alguila v. Safe Ins. Co., 416 Mass. 494, 499 (1993). “Any argument about ‘irrational outcomes’ must be addressed to the Legislature.” Safety Insurance Company, supra, 439 Mass, at 316.
On the other hand, while this Court cannot read language into a policy, it can — indeed it must — pay careful attention to the dictates of the Supreme Judicial Court, particularly when those dictates were so recently directed specifically to this Court. Consequently, the Court focuses further on the specific holding in the very recent Safely Insurance Company case. There, Justice Cowin, speaking for a unanimous SJC, ruled that this Court erred in interpreting G.L.c. 175, sec. 113L(1) to apply to anything but uninsured motor vehicles. Justice Cowin said
We conclude that both the statute and the Safety policy contemplate that UM benefits apply only when the motor vehicle is uninsured. Under the Statute, UM benefits must be provided when (1) the insured is legally entitled to recover damages for certain injuries from the owner or operator of a motor vehicle and (2) the motor vehicle responsible for the accident is uninsured.
The judge [this Court] erred when he construed the word “uninsured” to modify “owner or operator.” It describes the vehicle. Section 113L refers unambiguously to “uninsured motor vehicles” and “insured motor vehicle[s]" . . . Similarly, the Safely policy statement that UM benefits will be provided only if the injured party is legally entitled to recover from the owner or operator of an “uninsured . . . auto," speaks of the “company insuring the auto” becoming insolvent, and states that it considers “such an auto” to be uninsured . . .
Safety Insurance Company, supra, 439 Mass. at 313. (Emphases in original.)
For this Court to accept the position advocated by Premier and Hanover it would have to look to the condition or status of the owners of the motor vehicles involved and not that of the motor vehicles themselves. *48 This, however, is precisely what the SJC said was error in Safety Insurance Company.
Looking then just at the vehicles involved here, they were insured by Legion and Legion was declared insolvent. Thus, applying G.L.c. 175, sec. 113L(1) in the manner dictated by the SJC in Safety Insurance Company, the UM provisions in the Premier and Hanover policies must be read to provide coverage for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, and such coverage must include insured motor vehicles where the liability insurer thereof is insolvent. These are the formerly insured motor vehicles of Braintree, Lynn and Fitchburg that became uninsured on Legion’s insolvency. The policy language stating that those municipalities’ vehicles, purely because they are “owned by a governmental unit,” are not uninsured when, in fact, they were insured by a company that became insolvent, cannot be read in a manner consistent with the holding in Safety Insurance Company.
To construe the policy language as Premier and Hanover insist would result in applying the policies in a manner that conflicts with G.L.c. 113L. This Court cannot do that. See, e.g., Norfolk & Dedham Mut. Fire Ins. Co. v. Quane, 442 Mass. 704, 709 (2004).
Further, Premier’s and Hanover’s positions run directly counter to c. 175D’s purpose of not using the Fund to protect solvent insurance companies.
The statutory design of G.L.c. 175D contemplates that the public will bear ultimate financial responsibility for the Fund since member insurance companies of the Fund are to recoup payments to the Fund in the rates and premiums they charge for insurance policies. G.L.c. 175D, sec. 13 . .. Requiring payment by the Fund in the instant case would, thus, pass added premium costs on to the driving public, contrary to the legislative intent.
Ferrari v. Toto, 9 Mass.App.Ct. 483, 487 (1980). See also Vokey v. Massachusetts Insurers Insolvency Fund, supra 381 Mass. at 390.
“Because the Fund is a limited source of compensation created for the protection of policyholders against insolvent insurers . . . the Fund cannot become obligated to pay those claims for which solvent insurers . . . are properly responsible.” Norfolk & Dedham, supra 442 Mass. at 712.
At the oral argument on the cross motions Premier presented a motion to strike an affidavit of Victor Fanikos (“Fanikos”) which was filed by the Fund in support of its motions. In rendering its decision here this Court did not rely in any way upon the Fanikos affidavit. In fact, and meaning no insult to Fanikos, the Court did not even read his affidavit. For that reason, the Court takes no action on the motion to strike.
The Court observes that Hanover, in case No. 04-5251 BLS, in addition to an answer has filed a counterclaim. See Paper #6. The sole relief sought by Hanover’s counterclaim is a declaration that it “has no obligation to repay any monies to the Fund as a result of payments made by the Fund to the Estate of Adrianna Furness.”
In its complaint, the Fund asserts that it paid $17,000 to the Estate of Adrianna Furness in light of Hanover’s refusal to pay UM benefits, and the Estate assigned and transferred to the Fund all of the Estate’s right, title and interest in and under the Hanover policy arising out of or relating to the incident. See complaint, para. 20.
Given the determination made above, it is not a prudent use of judicial resources or the funds of the parties to further litigate the Hanover counterclaim. Consequently, the Court strongly urges the parties to seek a resolution thereof. In the meantime, and in order to facilitate any appeals from the judgments ordered in this Memorandum, this Court hereby makes the necessary express determination that there is no just reason for delay and directs the entry of judgment on the Fund’s complaint in case No. 04-5251 BLS, all pursuant to Mass.R.Civ.P. Rule 54(b).

ORDER

For the foregoing reasons, the Massachusetts Insurers Insolvency Fund’s Motion for Summary Judgment, Paper #14, is ALLOWED, and the Cross motion for Summary Judgment of Hanover Insurance Company, Paper #15, and the Cross motion for Summary Judgment of Premier Insurance Company, Paper #17, are each DENIED.
Final judgments in each case shall enter in favor of the Massachusetts Insurers Insolvency Fund declaring that, by reason of the insolvency of Legion Insurance Company, Premier Insurance Company and Hanover Insurance Company are each obligated to provide UM benefits to the claimants involved in the accidents in these cases to which their policies apply, in whatever amount may be appropriate under the particular Premier and Hanover policies in issue, and that the Massachusetts Insurers Insolvency Fund has no obligation to pay any of those claims as covered claims resulting from the Legion Insurance Company’s insolvency until the coverage provided under the appropriate Premier and Hanover policies in issue is first exhausted. Further, if any claimant does exhaust the UM coverage on the Premier or Hanover policies, any amount payable by the Fund on a covered claim must be reduced by an amount equal to the UM limits in the particular policy.

 This Court observes, but does not understand why, in the cited case there is an apostrophe after the word “Insurers” in the Fund’s name, when in all other reported cases, and in the captions of the three cases here, no such apostrophe is included. Nothing, however, turns on this obscure point.