METROPOLITAN PROPERTY & CASUALTY INSURANCE
COMPANY *vs.* MATTHEW J. WESTBERG & another.[1]

No. 02-P-1497.

Middlesex. February 2, 2004. - June 3, 2004.

Present: LAURENCE, KAPLAN, & BECK, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist. *Motor Vehicle,*
Insurance. *Contract,* Insurance.

This court concluded that under the terms of a motor vehicle insurance policy
issued by the plaintiff insurance company, the defendants (who were pas-
sengers in the insured motor vehicle at the time it was involved in an ac-
cident) were not entitled to underinsurance benefits. [248-250]

CIVIL ACTION commenced in the Superior Court Department on
December 21, 2000.

The case was heard by *Janet L. Sanders,* J., on motions for
summary judgment.

*Paul J. Franco* for Matthew J. Westberg.

*Michael J. McCabe* for the plaintiff.

KAPLAN, J. The plaintiff insurance company sought a declara-
tion whether it owed underinsurance benefits to the defendants.
A judge of the Superior Court held in the plaintiff's favor that it
did not owe such benefits. Agreeing in substance with the
judge's analysis in her memorandum of decision, we shall af-
firm her declaration.

Paul Cincotta, in the morning of July 11, 1999, was driving
his Jeep Wrangler on Route 146 in Rhode Island, when, in
crossing lanes, he lost control of the car. The car rolled over
several times in a catastrophic accident; passenger Jazmin Vega
was killed, and passengers Scott Cleveland and Matthew West-

---

[1]Myrna Rivera, as administratrix of the estate of Jazmin Vega. For
convenience we speak of Westberg in the opinion as a stand-in for all
defendants.

berg were injured.[2] The plaintiff Metropolitan Property & Casualty Insurance Company had insured the car under a standard Massachusetts liability policy. The company did business in Massachusetts and all the occupants of the car were Massachusetts residents.

We deal with Westberg's claim against the insurer. See note 1, *supra.* The policy had optional coverage for bodily injury to others with limits of $20,000 per person and $40,000 per accident, and optional underinsurance coverage in the same amounts. Had the accident occurred in Massachusetts, Westberg would be entitled to a recovery for bodily injury in the amount specified, but in respect to underinsurance benefits — the bodily injury coverage being insufficient to compensate fully for Westberg's injuries — Westberg would fail of any recovery because the policy limits in the underinsured category did not exceed the bodily injury limits. This appears from Part 12 of the policy.[3] See *Alguila* v. *Safety Ins. Co.,* 416 Mass. 494, 498 (1993); *Murphy* v. *Safety Ins. Co.,* 429 Mass. 517, 519 (1999). See also G. L. c. 175, § 113L(2).

Westberg tries to spell out an underinsurance claim against the insurer based on the circumstance that the accident occurred in Rhode Island. The policy spoke in Part 5 of bodily injury in such an out-of-State happening as follows:

> "If the accident occurs in any other state . . . and you have purchased any coverage at all under this Part, your policy will automatically apply to that accident as follows:

> "If the state or province has:

> "1. a financial responsibility law or similar law specifying limits of liability for bodily injury or property damage higher than the limits you have purchased, your policy will provide the higher specified limits.

---

[2]Paul Cincotta and Scott Cleveland were named as defendants in the complaint but have not appealed from the judgment.

[3]Part 12 of the policy states in pertinent part that the insurance company "will pay any unpaid damages up to the difference between the automobile bodily injury liability insurance 'per accident' limit covering the legally responsible owners and the 'per accident' limit for [bodily injury caused by an underinsured automobile]. . . ."

"2. a compulsory insurance or similar law requiring your auto to have insurance whenever it is used in the state . . . , your policy will provide at least the required minimum amounts and types of coverage."

In the insurer's view, and in ours, Rhode Island is a "financial responsibility" State, so clause 1 applies.[4] The Rhode Island statutory scheme sets limits for bodily injury of $25,000 per person and $50,000 per accident.[5] Thus Westberg improves on the stated $20,000 bodily injury coverage of the policy by something less than $5,000; this increase the insurer concedes. But as regards underinsured benefits, the insurer denies any liability because clause 1 does not extend to these benefits; even if these be raised to the Rhode Island figure under clause 1, they would equate with, but not exceed, the limit for bodily injury.

Westberg has no persuasive response to this conclusion if clause 1 is the relevant clause. It is quite doubtful that his case would be stronger if clause 2 applied. The clause 2 text is not entirely clear which Rhode Island law was to be adopted, but it seems enough to observe that underinsurance coverage is not required by Rhode Island law for nonresident motorists, see R.I. Gen. Laws § 27-7-2.1(a) (1998) (text in Appendix); *Martin* v. *Lumbermen's Mut. Cas. Co.*, 559 A.2d 1028, 1030, 1031 (R.I. 1989), and clause 2 is not invoked.

Further, Westberg encounters the obstacle of the policy provision noted above that looks for underinsurance limits to exceed the limits for bodily injury: at most, application of Rhode Island law might raise the underinsurance limit to an equivalence with the bodily injury limit. See R.I. Gen. Laws § 27-7-2.1(a).

Still further, if Westberg could somehow establish an entitlement to underinsurance benefits, he would have to go on and show that this recovery could be "stacked" upon (added to) his recovery for bodily injury. He tries to rely on supposedly favor-

---

[4]"Financial responsibility" States do not condition registration upon coverage by means of an insurance policy; the security required, however, may usually be satisfied by such a policy (among other stated means). For Rhode Island, see R.I. Gen. Laws §§ 31-31-4, 31-31-8(a) (1995) (see Appendix). By contrast, Massachusetts is a "compulsory insurance" State requiring an insurance policy as a condition of registration. See G. L. c. 90, § 1A.

[5]R.I. Gen. Laws § 31-31-7(a) (1995) (see Appendix).

able Rhode Island law with respect to stacking, but in light of the prevailing Massachusetts contacts in the case, Massachusetts law would surely be chosen in preference to the law of Rhode Island. See *Bushkin Assocs.* v. *Raytheon Co.*, 393 Mass. 622, 628-636 (1985); *Kahn* v. *Royal Ins. Co.* 429 Mass. 572, 573, 574-576 (1999). Indeed, the Rhode Island Supreme Court has itself acknowledged in circumstances of a Massachusetts liability insurance policy that Massachusetts law is the choice, with its unfavorable view of stacking. See *Baker* v. *Hanover Ins. Co.*, 568 A.2d 1023, 1024-1025 (R.I. 1990) (Weisberger, J.), citing *LeCuyer* v. *Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 709 (1988), and *Moore* v. *Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 1010 (1988).

The judgment declaring rights is affirmed.

*So ordered.*

APPENDIX.

Relevant provisions of Rhode Island General laws of 1956 (in order cited in opinion):

§ 31-31-4. "The provisions of this chapter requiring a deposit of security and suspensions for failure to deposit security, subject to certain exemptions, shall apply to the driver and owner of any vehicle of a type subject to registration under the motor vehicle laws of this state, which is in any manner involved in an accident within this state, which accident has resulted in bodily injury to or death of any person or damage to the property of any one person in excess of five hundred dollars ($500)."

§ 31-31-8. "(a) The security required under this chapter may consist of an insurance company policy or bond, cash, a savings bank deposit, marketable securities, or a recorded bond with individual surety having sufficient equity in real estate within this state scheduled in the bond, and shall be in a form and amount as the registry may require, but in no case in excess of the limits specified in § 31-31-7 in reference to the acceptable limits of a policy or bond."

§ 31-31-7. "(a) No policy or bond shall be effective under § 31-31-6 unless issued by an insurance company or surety company authorized to do business in this state, except as provided in subsection (b) of this section, nor unless the policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than twenty-five thousand dollars ($25,000) because of bodily injury or death of one person, in any one accident and subject to the limit for one person, to a limit of not less than fifty thousand dollars ($50,000) because of bodily injury or death of two (2) or more persons in any one accident, and if the accident has resulted in injury to or destruction of property of others, the policy or bond is subject to a

limit of not less than twenty-five thousand dollars ($25,000) because of injury to or destruction of property of others in any one accident."

§ 27-7-2.1. "(a) No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, for bodily injury or death in limits set forth in each policy, but in no instance less than the limits set forth in § 31-31-7 or § 31-32-24 under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of property damage, bodily injury, sickness, or disease, including death, resulting therefrom. The insurer shall provide uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits. However, the named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limits set forth in § 31-31-7 or § 31-32-24, unless the named insured is purchasing only the minimum coverage required by compulsory insurance provisions of the general laws, in which case the limit can be reduced to zero, but only after signing an advisory notice approved by the director of business regulation concerning the hazard of uninsured and underinsured motorists. That coverage shall also apply in the case of a responsible party whose liability insurance carrier was insolvent at the time of the accident or became insolvent subsequent thereto."