MASSACHUSETTS INSURERS INSOLVENCY FUND *vs.* PREMIER
INSURANCE COMPANY & others[1]
(and three consolidated cases[2]).

Suffolk. May 7, 2007. - July 12, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Insurance,* Motor vehicle insurance, Construction of policy, Uninsured motorist,
Insolvency of insurer. *Contract,* Insurance. *Statute,* Construction. *Municipal
Corporations,* Insurance. *Massachusetts Insurers Insolvency Fund.*

This court concluded that the language in the standard automobile insurance
policy excluding uninsured motorist coverage for "an auto owned by a
governmental unit" conflicted with G. L. c. 175, § 113L, and, therefore, was
invalid and unenforceable; accordingly, such language in a policy did not
trigger an obligation on the part of the Massachusetts Insurers Insolvency
Fund to compensate individuals injured in motor vehicle accidents caused by
vehicles owned by governmental entities (municipalities) and insured by an
insurer that had become insolvent, until the individuals had exhausted their
uninsured motorist coverage under their own insurance policies. [426-432]
This court remanded a civil action to the Superior Court to resolve a counter-
claim, where the merits of that counterclaim had not been decided below.
[432]

CIVIL ACTIONS commenced in the Superior Court Department,
one on October 21, 2004, and two on December 3, 2004,
respectively.

After consolidation, the cases were heard by *Allan van Ges-
tel,* J., on motions for summary judgment.

CIVIL ACTION commenced in the Superior Court Department on
February 11, 2004.

The case was heard by *Elizabeth Bowen Donovan,* J., on mo-
tions for summary judgment, and entry of final judgment was
ordered by *Mitchell J. Sikora, Jr.,* J.

---

[1]Michelle Cote, Michael Carbone, and the city of Fitchburg.

[2]Massachusetts Insurers Insolvency Fund *vs.* Premier Insurance Company;
Massachusetts Insurers Insolvency Fund *vs.* Hanover Insurance Company; Jef-
frey Frank *vs.* Massachusetts Insurers Insolvency Fund & another.

After consolidation of the appeals, the Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.

*John D. Curran* for Premier Insurance Company.

*John H. Bruno, II*, for Hanover Insurance Company.

*Christine Vargas* (*Mark Robins* with her) for Massachusetts Insurers Insolvency Fund.

SPINA, J. In these consolidated cases, transferred from the Appeals Court on our own motion, we consider the scope of the obligation of the Massachusetts Insurers Insolvency Fund (Fund) to compensate an individual injured in a motor vehicle accident where the vehicle causing the accident is owned by a governmental entity, a municipality, and is insured by an insurer that becomes insolvent. For the reasons that follow, we conclude that the Fund's obligation to compensate the injured individual does not arise, if at all, until the individual's own uninsured motor vehicle (UM) coverage has been exhausted.

1. *Background.* On November 14, 2000, Adrianna Furness was fatally injured when her motor vehicle hit a tree while being pursued by a police cruiser owned by the town of Braintree. She was covered under a standard Massachusetts automobile insurance policy, seventh edition (standard automobile policy), issued by Hanover Insurance Company (Hanover), which included UM benefits. On February 28, 2001, Grazia Laferla was injured in a motor vehicle accident with a street sweeper owned by the city of Lynn. She was covered under a standard automobile policy issued by Premier Insurance Company (Premier), which included UM benefits. On March 7, 2001, Jeffrey Frank was injured in a motor vehicle accident with a snowplow owned by the town of Sharon. He was covered under a standard automobile policy issued by Premier, which included UM benefits. On August 27, 2001, Michelle Cote was injured in a motor vehicle accident with a truck owned by the city of Fitchburg. She was covered under a standard automobile policy issued by Premier, which included UM benefits.

The drivers of the municipally owned vehicles were alleged to be legally responsible for the injuries sustained by the four individuals in their respective accidents. At the time of each accident, each municipality had motor vehicle insurance coverage under a policy issued by Legion Insurance Company (Legion).

However, on July 28, 2003, the Commonwealth Court of Pennsylvania, a court of competent jurisdiction, declared Legion insolvent. See *Koken* v. *Legion Ins. Co.*, 831 A.2d 1196 (Pa. Commw. Ct. 2003), aff'd sub nom. *Koken* v. *Villanova Ins. Co.*, 583 Pa. 400 (2005). See also G. L. c. 175D, § 1 (4) (defining "[i]nsolvent [i]nsurer").

The three injured individuals and the estate of Adrianna Furness (collectively, the claimants) sought UM coverage from their respective automobile insurers, Hanover and Premier (collectively, the UM insurers).[3] Each claim was denied based on a provision in the standard automobile policy stating that motor vehicles owned by a governmental unit are not considered to be "uninsured" (government vehicle exclusion).[4] The claimants then sought compensation from the Fund. Their claims were denied on the ground that, pursuant to G. L. c. 175D, § 9, they first had to exhaust their UM coverage under their own standard automobile policies.

a. *Proceedings in the Superior Court in Suffolk County.* In late 2004, the Fund commenced separate actions in the Superior Court in Suffolk County for declaratory judgment and other relief against the UM insurers.[5] It sought a determination of the rights and obligation of the parties for the payment of bodily injury benefits under the motor vehicle policies of an insolvent insurer, Legion, where there was a source of UM coverage for

---

[3]The estate of Adrianna Furness initially made a claim to the town of Braintree for damages as a result of Adrianna's death. Because Legion had been declared insolvent, the Fund assumed the handling of the claim, which it settled for $17,000. The Fund then sought reimbursement from Hanover, pursuant to the UM provision in Adrianna's policy.

[4]The language in the standard automobile policy pertaining to uninsured motor vehicles, set forth in Part 3 of the policy, is as follows: "Sometimes an owner or operator of an auto legally responsible for an accident is uninsured. . . . Under this Part, we will pay damages for bodily injury to people injured or killed in certain accidents caused by uninsured . . . autos. We will pay only if the injured person is legally entitled to recover from the owner or operator of the uninsured . . . auto. . . . Sometimes the company insuring the auto responsible for an accident will deny coverage or become insolvent. We consider such an auto to be uninsured for purposes of this Part. *However, we do not consider an auto owned by a governmental unit or someone who is legally self-insured to be an uninsured auto*" (emphasis added).

[5]These separate actions, pertaining to the accidents involving Adrianna Furness, Grazia Laferla, and Michelle Cote, were subsequently consolidated in the Superior Court.

such claims from solvent insurers, Premier and Hanover.[6] The Fund and the UM insurers then filed cross motions for summary judgment.

On September 15, 2005, a judge allowed the Fund's motion for summary judgment and denied the UM insurers' motions. Judgment was entered in each case declaring that by reason of Legion's insolvency, the UM insurers were obligated to provide UM benefits to the claimants in the appropriate amounts under their respective policies. Further, the Fund was not obligated to pay any of the claimants' claims as covered claims resulting from Legion's insolvency until the claimants' own UM coverage was first exhausted. Finally, if any of the claimants did exhaust the UM coverage of their own policies, any amount payable by the Fund thereafter on a covered claim had to be reduced by an amount equal to the UM limits in the relevant policy.[7]

b. *Proceedings in the Superior Court in Norfolk County.* In parallel proceedings, Jeffrey Frank commenced an action in the Superior Court in Norfolk County for declaratory relief against the Fund and Premier. In his subsequent motion for summary judgment against the Fund or, in the alternative, against Premier, Frank asserted that one or the other party was responsible for indemnification of his damages. Premier filed a cross motion

---

[6]In addition to filing an answer to the Fund's petition for declaratory judgment, Hanover filed a counterclaim in which it sought a declaration that it had no obligation to repay any monies to the Fund as a result of the payment made by the Fund to the estate of Adrianna Furness. Hanover asserted that while Adrianna was alleged to have been a household member of the named insured, Margaret Furness, Adrianna was a minor and was unlicensed to operate a motor vehicle in Massachusetts. Hanover claimed that the injuries to Adrianna, with respect to which a claim was made, were the result of her own actions, and not those of an "auto legally responsible for an accident" that was uninsured. Further, Hanover alleged that no one had followed the requirements of the policy issued to Margaret Furness in that any decision as to the legal responsibility of the owner or operator had to be determined either by agreement or by mandatory arbitration. Where questions relating to the legal liability of the town of Braintree had not been decided, Hanover asserted that it was entitled to demand that issues of legal responsibility and damages be resolved through arbitration.

[7]The judgment entered against Hanover also stated that if the Fund made any payment to any claimant before any exhaustion of the Hanover policy, then Hanover was obligated to reimburse the Fund therefor up to the extent of the limits of the Hanover policy.

for summary judgment. The Fund opposed Premier's cross motion for summary judgment and requested a declaration of its obligation to Frank.

On November 4, 2005, a judge denied Frank's motion for summary judgment and allowed Premier's motion.[8] The judge concluded that the government vehicle exclusion in the standard automobile policy operated to preclude Frank from UM coverage, notwithstanding the insolvency of Legion. Further, the judge opined that before Frank could turn to the Fund as a source of compensation for his covered claim against Legion, he first had to seek recovery from the town of Sharon, pursuant to G. L. c. 258, § 2.[9]

2. *Obligations of the Fund.* The UM insurers now contend that, pursuant to the clear language of the standard automobile policy, vehicles owned by governmental entities are never considered "uninsured" and, therefore, the UM insurers are not responsible for providing UM coverage with respect to those particular vehicles. As a consequence, the UM insurers continue, they are not obligated here to compensate the claimants for their injuries because of the insolvency of Legion. Instead, they assert, it is the Fund that should be responsible for paying such claims. The UM insurers argue that the uninsured motor vehicle statute, G. L. c. 175, § 113L, does not conflict with their position. We disagree.

The interpretation of an insurance policy is a question of law for the trial judge and the reviewing court. See *Cody* v. *Connecticut Gen. Life Ins. Co.,* 387 Mass. 142, 146 (1982). Like all contracts, the terms of an insurance policy will be construed "according to the 'fair meaning of the language used, as applied to the subject matter.' " *Davis* v. *Allstate Ins. Co.,* 434 Mass. 174, 179 (2001), quoting *Bilodeau* v. *Lumbermens Mut.*

[8]The appeal filed in this case was consolidated with the appeals filed in the three cases decided by the Superior Court judge in Suffolk County.

[9]General Laws c. 258, § 2, provides, in part: "Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances, except that public employers shall not be liable . . . for any amount in excess of one hundred thousand dollars."

*Cas. Co.*, 392 Mass. 537, 541 (1984). See *Massachusetts Insurers Insolvency Fund* v. *Safety Ins. Co.*, 439 Mass. 309, 313 (2003) (policy language must be "read as a whole and in the context of the insurance scheme in Massachusetts").

The language of the standard automobile policy is controlled by the Commissioner of Insurance. See *id.* at 312; *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 140 (1994). Therefore, the uninsured motor vehicle provision "is not construed against [the UM insurers], but in conformity with the statute, G. L. c. 175, § 113L, which dictates its content." *Massachusetts Insurers Insolvency Fund* v. *Safety Ins. Co., supra.* Given that the underlying motor vehicle accidents here involved municipally owned vehicles that were insured by an insolvent insurer, arguably rendering those vehicles "uninsured," we consider G. L. c. 175, § 113L, in conjunction with the statute that created and governs the Fund, G. L. c. 175D. To the extent possible, these statutes must be construed so as to create a harmonious whole, consistent with the legislative purposes of both statutes. See *Independence Park, Inc.* v. *Board of Health of Barnstable*, 403 Mass. 477, 480 (1988); *Boston Hous. Auth.* v. *Labor Relations Comm'n*, 398 Mass. 715, 718 (1986).

Massachusetts is a "compulsory insurance" State, requiring that a liability insurance policy be secured as a condition to the registration of a motor vehicle. See G. L. c. 90, § 1A; *Metropolitan Prop. & Cas. Ins. Co.* v. *Westberg*; 61 Mass. App. Ct. 247, 249 n.4 (2004). However, motor vehicles owned by the Commonwealth or any political subdivision thereof are exempt from this requirement. See G. L. c. 90, § 1A. Notwithstanding this statutory exemption, municipalities can choose to purchase insurance for their vehicles, as happened here. See G. L. c. 258, § 8 ("A public employer may procure insurance for payment of damages incurred pursuant to this chapter"). Once this occurs, municipalities are no longer self-insureds. Instead, for purposes of G. L. c. 175, § 113L, they become akin to private insureds who purchase insurance for their own motor vehicles.

All motor vehicle liability insurance policies, including those issued to the claimants and those purchased by the municipalities, must include, pursuant to G. L. c. 175, § 113L, UM coverage for injuries sustained in an accident involving an uninsured

vehicle, which includes a motor vehicle where the liability insurer thereof has become insolvent.[10] "The aim of the uninsured motorist statute is to minimize the catastrophic financial loss for victims of automobile accidents caused by the negligence of uninsured tortfeasors." *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 177 (1981). Section 113L does not include an exemption from UM coverage for vehicles owned by a governmental entity that has chosen to purchase insurance, on the theory that those vehicles never would be deemed "uninsured." Rather, UM coverage pursuant to § 113L encompasses *all* motor vehicles that are uninsured, which may include those owned by a governmental entity that were insured *until* the liability insurer thereof became insolvent, effectively rendering such vehicles "uninsured."[11]

Once a liability insurer becomes insolvent, the provisions of the Fund, set forth in G. L. c. 175D, come into play. "The Fund is a statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . [that is] available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer."[12] *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund*, 373 Mass. 798, 799 (1977). See *Barrett* v. *Massachusetts Insurers Insolvency Fund*, 412 Mass. 774, 776-777 (1992). It was created pursuant to G. L. c. 175D, § 3, and carries out the powers

---

[10]General Laws c. 175, § 113L (1), states: "*No policy* shall be issued or delivered in the commonwealth with respect to a motor vehicle . . . registered in this state unless such policy provides coverage in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury, sickness or disease, including death resulting therefrom; *and, subject to the terms and conditions of such coverage, such coverage shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency*" (emphasis added).

[11]Such UM coverage would not apply to a vehicle owned by a municipality that has chosen to be a self-insurer. See note 14, *infra*.

[12]General Laws c. 175D does *not* apply to "life, accident and health, title, surety, disability credit, mortgage guaranty, financial guaranty or other forms of insurance offering protection against investment risks, insurance of warranties of any type of service contracts and ocean marine insurance." G. L. c. 175D, § 2.

and duties set forth in G. L. c. 175D, § 5. The Fund "is obligated to pay covered claims against an insolvent insurer (up to $300,000 per claim) in place of the insolvent insurer."[13] *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, 418 Mass. 486, 486 (1994). See G. L. c. 175D, § 5 (1) (*a*), (*b*). "The Fund's obligations and expenses are assessed to a broad range of insurers, including all liability and property insurers who write insurance in the Commonwealth." *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund*, 423 Mass. 165, 167 (1996). See G. L. c. 175D, §§ 1 (5), 5 (1) (*c*). Insurers recoup the amounts that they pay into the Fund by increasing their rates and premiums. See G. L. c. 175D, § 13; *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund, supra.* Thus, it is ultimately the insurance-buying public that bears the cost of the Fund's payment of claims against insolvent insurers. See *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund, supra.*

General Laws c. 175D, § 9, imposes limits on the scope of the Fund's obligations regarding covered claims. It states, in pertinent part:

> "Any person having a claim against his insurer under any insolvency provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy."

G. L. c. 175D, § 9. We have stated that "[t]he filing of a claim by an injured person under the uninsured motorist provision of his own insurance policy is both proper and necessary under G. L. c. 175D, § 9, before recourse can be had to the Fund." *Vokey* v. *Massachusetts Insurers Insolvency Fund*, 381 Mass. 386, 389 (1980). "The purpose of the exhaustion requirement of the first sentence of § 9 is to render the Fund a source of

[13]Pursuant to G. L. c. 175D, § 1 (2), a "covered claim" is defined as "an unpaid claim . . . which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (a) the claimant or insured is a resident of the commonwealth; or (b) the property from which the claim arises is permanently located in the commonwealth." Further, a "covered claim" does not include "any amount due any reinsurer, insurer, insurance pool or underwriting association . . . ." *Id.*

last resort in the event of insolvency. The second sentence of § 9 states a clear legislative policy that any recovery to which a claimant is contractually entitled under his own insurance policy shall be offset to reduce the liability of the Fund." *Id.* at 390. Thus, where UM coverage exists, the burden of paying for losses cannot be shifted to the Fund. See *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund,* 445 Mass. 502, 524 (2005) ("The statutory scheme discloses a primary legislative intent that the Fund serve only claimants of insolvent insurers who have no other source of recovery beyond the Fund"); *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Quane,* 442 Mass. 704, 711-712 (2004).

Because the Fund is a source of last resort, the claimants here must first exhaust their UM coverage under their own insurance policies, unless we conclude that such coverage is not available because of the government vehicle exclusion in the standard automobile policy. We decline to reach that conclusion. If we were to accept the UM insurers' interpretation of their obligation to the claimants, which is simply that they have no such obligation, then we would be eviscerating the mandatory language and legislative purpose of G. L. c. 175, § 113L. This statute, which governs the content of the standard automobile policy, dictates that *no* motor vehicle liability policy shall be issued unless it provides UM coverage. There is no statutory exception to this coverage requirement for a particular category of vehicles, namely, those that are municipally owned for which a motor vehicle liability policy has been purchased. To the contrary, the mandates of § 113L are applicable to all motor vehicles for which insurance policies have been issued. The flaw in the language of the standard automobile policy pertaining to uninsured motor vehicles, set forth in Part 3 of the policy, is that it fails to recognize the distinction between governmental units that are self-insured, thereby rendering the motor vehicles of such municipalities always "insured," and governmental units that purchase motor vehicle policies from liability insurers who may become insolvent, thus rendering those motor vehicles "uninsured."

We conclude that the exclusionary language in the standard automobile policy, which prohibits UM coverage for "an auto

owned by a governmental unit," conflicts with § 113L and, there-fore, must be deemed invalid and unenforceable.[14] See *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 173 (1981) (statute trumps policy language); *Wincek* v. *United States Fid. & Guar. Co.*, 28 Mass. App. Ct. 901, 901 (1989). See also *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 457 (1985) ("any policy exclusion to uninsured motorist coverage is unenforceable in light of the Legislature's decision not to sanction such exclusions in the statute"). Cf. *Heinrich-Grundy* v. *Allstate Ins. Co.*, 402 Mass. 810, 812 (1988) (territorial restriction as applied to uninsured motorist coverage valid and enforceable where restriction was general condition of coverage, applicable to entire insurance policy, not just to uninsured motorist coverage provisions of policy).

We are cognizant of the language in G. L. c. 175, § 113L (1), stating that, "*subject to the terms and conditions of such [UM] coverage,* such coverage shall include an insured motor vehicle where the liability insurer thereof [has become insolvent]" (emphasis added). However, the complete prohibition on UM coverage for municipally owned vehicles does not constitute a term or condition of UM coverage because it wholly denies the very existence of such coverage. In other words, terms and conditions of coverage refer to the parameters of coverage, not the fact of coverage. The standard automobile policy includes myriad terms and conditions of UM coverage, including the financial limits of protection, the specific individuals covered under the policy, and the manner by which damages are to be determined. Subject to these provisions, UM coverage under the standard automobile policy encompasses insured motor vehicles where the insurer thereof has become insolvent.

When Legion became insolvent, the four municipal vehicles at issue here assumed the status of "uninsured" motor vehicles. The UM insurers must be ready to provide coverage to those legally entitled to recover damages. To conclude otherwise would be

---

[14]Our conclusion has no bearing on and does not invalidate the language in the standard automobile policy stating that a motor vehicle owned by someone who is legally self-insured will not be considered "an uninsured auto." This would include municipally owned motor vehicles for which no liability policy had been procured because the municipality elected to be a self-insurer.

contrary to the clear purpose of G. L. c. 175D to be a financial resource of last resort in the event of an insurer's insolvency. "[T]he Fund cannot become obligated to pay those claims for which solvent insurers . . . are properly responsible." *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Quane, supra* at 712. Otherwise, it will be the insurance-buying public, for whose protection the Fund was created, that will bear the financial burden of insolvent insurers in the form of higher premiums. Such a result is inconsistent with the insurance scheme in Massachusetts.

3. *Hanover's counterclaim.* In its petition for declaratory judgment against Hanover, the Fund asserted that it paid $17,000 to the estate of Adrianna Furness as a consequence of Hanover's refusal to pay the estate UM benefits. The estate then assigned and transferred to the Fund all of the estate's rights and interests under the Hanover policy arising out of or relating to Furness's accident. As we have noted, Hanover filed a counterclaim in which it sought a declaration that it had no obligation to repay any monies to the Fund. In his memorandum of decision, the judge opined that, given the court's determination that UM coverage existed, the parties should seek a resolution to Hanover's counterclaim between themselves, and not unnecessarily expend further judicial resources on the matter. Contrary to Hanover's assertion, the judge did not "decide" the merits of Hanover's counterclaim. Both Hanover and the Fund agree that this matter should be remanded to the Superior Court so that Hanover's counterclaim can be resolved. We conclude that this is the appropriate procedure.

4. *Conclusion.* The judgment in Massachusetts Insurers Insolvency Fund *vs.* Premier Insurance Company & others (no. SUCV2004-04581) is affirmed. The judgment in Massachusetts Insurers Insolvency Fund *vs.* Premier Insurance Company (no. SUCV2004-05250) is affirmed. The judgment in Massachusetts Insurers Insolvency Fund *vs.* Hanover Insurance Company (no. SUCV2004-05251) is affirmed, and this matter is remanded to the Superior Court in Suffolk County for further proceedings in accordance with this opinion. The order for judgment in Frank *vs.* Massachusetts Insurers Insolvency Fund & another (no. NOCV2004-00241) is vacated, the judgment is reversed, and a new judgment is to enter in the Superior Court in Norfolk

County in favor of Frank, affirming his right to UM coverage from Premier.

*So ordered.*