SUPERIOR COURT 
 
 REBECCA L. KONSEVICK & another[1], individually and on behalf of others similarly situated vs. PLYMOUTH ROCK ASSURANCE CORPORATION

 
 Docket:
 2084CV02130
 
 
 Dates:
 March 22, 2021
 
 
 Present:
 Robert B. Gordon, Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS’ MOTION TO DISMISS
 
 

             This case presents a dispute regarding the interpretation of the Massachusetts Standard Automobile Policy (the “Standard Policy” or “Policy”) as applied by the Defendant, Plymouth Rock Assurance Corporation (“Plymouth Rock” or the “Defendant”). The Plaintiffs, Rebecca Konsevick and Colleen Bartini, on behalf of themselves and others similarly situated, seek declaratory relief and bring claims for breach of contract and violation of G.L. c. 93A and G.L. c. 176D. The Plaintiffs’ claims arise out of Plymouth Rock’s failure to consider the costs of title, registration, and inspection when it determined the “actual cash value” of their vehicles when it indemnified them for an insured loss. Presented for decision is the Defendant’s Motion to Dismiss the First Amended Complaint pursuant to Mass. R. Civ. P. 12(b)(6). For the reasons which follow, the Defendant’s motion shall be ALLOWED.
 
---------------------------
 
[1]Colleen A. Bartini
 
                                                            -1-
 
BACKGROUND
I.          The Standard Policy
            The Standard Policy is a form of insurance contract “prescribed by statute, with standard language controlled by the Division of Insurance.” Jacobs v. United States Fidelity & Guar. Co.,417 Mass. 75, 76 (1994). See G.L. c. 175, § 113B. The instant action centers on language found within the Standard Policy’s collision and comprehensive coverage provisions, pursuant to which insurers agree to pay for direct and accidental damage to an insured vehicle.[2] Both provisions contain similar language, which provides, in relevant part, as follows:
“[The insurer] will pay the cost to repair the auto or any of its parts up to the actual cash value of the auto or any of its parts at the time of the [collision or loss]. [The insurer] will not pay for any decrease in value claimed to result from the loss. The most [the insurer] will pay will be either the actual cash value of the auto or the cost to repair the auto, whichever is less. . . . Unless you have purchased agreed amount coverage, actual cash value of the auto will be determined at the time of the loss. Actual cash value may include an adjustment for depreciation and betterment and for the physical condition of the auto. [The insurer] will, at [its] option, repair the auto, repair or replace any of its parts, or declare the auto a total loss.”
            Although the Standard Policy does not define the term “actual cash value” (“ACV”), the Division of Insurance has identified four factors that insurers must consider to determine ACV. These factors are set forth in 211 Code Mass. Regs. § 133.05(1) (“Section 133.05(1)”), as follows::
“[T]he insurer shall determine the vehicle’s actual cash value. . . . based on a consideration of the following factors:
(a)        the retail book value for a motor vehicle of like kind and quality, but for the damage incurred;
 
---------------------------
 
[2]More particularly, the collision provision, which is set forth in Part 7 of the Policy, insures and pays for “direct and accidental damage to [an insured vehicle] caused by a collision.” The comprehensive provision, which is set forth in Part 9 of the Policy, insures and pays for “direct and accidental damage to or loss of [an insured vehicle] other than damage caused by a collision.”
 
                                                            -2-
 
(b) the price paid for the vehicle plus the value of prior improvements to the motor vehicle at the time of the accident, less appropriate depreciation;
 
(c) the decrease in value of the motor vehicle resulting from prior unrelated damage which is detected by the appraiser; and
 
(d) the actual cost of purchase of an available motor vehicle of like kind and quality but for the damage sustained.”
II.        The Plaintiffs’ Allegations[3]
            Each Plaintiff owned a private passenger vehicle that was titled, registered, and inspected in accordance with Massachusetts law and insured under a Standard Policy issued by Plymouth Rock (the “insured vehicles”). In 2018 and 2019, the insured vehicles were involved in automobile accidents that prompted each Plaintiff to file a property damage claim with the Defendant. In each instance, Plymouth Rock determined that the cost to repair the insured vehicle exceeded the cost to replace it, and accordingly elected to pay the vehicle’s ACV rather than the cost of repair. The Defendant then paid each Plaintiff an amount calculated by a third- party vendor. The vendor did not consider or factor in the costs of titling, registering and inspecting the insured vehicles when it determined each vehicle’s ACV. The Plaintiffs maintain that the calculation of ACV upon which Plymouth Rock relies for its insurance payments to them thus violates the Standard Policy, as expounded by Section 133.05(1).
DISCUSSION
 
---------------------------
 
[3]The following facts, which are assumed to be true for purposes of Rule 12, are drawn from the Plaintiffs’ First Amended Complaint. Error! Main Document Only.Along with the Complaint, the Court considers documents upon which the allegations of the Complaint rely. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 (2004).
 
                                                            -3-
 
I.          Motion to Dismiss Standard
            The Defendant has moved to dismiss the Plaintiffs’ claims pursuant to Mass. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief....” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). “The allegations must be more than ‘mere labels and conclusions,’ and must ‘raise a right to relief above the speculative level.’” Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 17 (2018) (quoting Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 165 (2014)). The Court’s review is limited to the factual allegations of the complaint and facts contained within any attached exhibits, see Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 285 n.6 (2007), as well as any matters of public record and documents relied upon in the complaint itself. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004); Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). The Court must “accept as true the factual allegations in the complaint and the attached exhibits, [and] draw all reasonable inferences in the plaintiff’s favor . . .” Buffalo-Water 1, LLC, 481 Mass. at 17.
II.        The Defendant’s Motion to Dismiss
            The Plaintiffs have asserted claims for declaratory relief, breach of contract, and violation of G.L. c. 93A and G.L. c. 176D. As grounds, they contend that the Defendant’s failure to consider and factor in the costs of title, registration and inspection (collectively, the “regulatory fees”) when it determined the ACV of each insured vehicle violated the terms of the Standard Policy, and constituted an unfair and deceptive trade practice. Plymouth Rock counters that the Policy does not require it to consider or factor in the cost of regulatory fees when it determines a
 
                                                            -4-
 
vehicle’s ACV, and thus argues that the Plaintiffs have failed to state a claim upon which relief may be granted. The Defendant is correct.
            A.        Criteria Governing the Determination of ACV
            The Court must first address the Plaintiffs’ contention that the issue of whether regulatory fees must be included in ACV presents a question of fact that cannot be determined on a motion to dismiss. In support of this assertion, the Plaintiffs argue that ACV “should be interpreted so as to effectuate the goal of putting an insured back into their pre-loss position.” (Plaintiff’s Opposition, at 9.) To that end, the Plaintiffs argue that ACV must be computed under the “broad evidence rule,” pursuant to which a “trier of facts may consider any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of loss.” O’Connor v. Merrimack Mut. Fire Ins. Co., 73 Mass. App. Ct. 205, 210 (2008) (quoting 12 Couch, Insurance § 175:33 (3d ed. 1998)). The Court does not agree.
            The calculation of ACV is controlled by the specific terms of the insurance policy in question, and is not dictated by the larger purpose of insurance more generally. Massachusetts courts have only employed the broad evidence rule to estimate the value of property at the time of a loss when faced with insurance policies that do not themselves define or import a specific standard for determining ACV. See, e.g., Interstate Gourmet Coffee Roasters, Inc. v. Seaco Ins. Co., 59 Mass. App. Ct. 78, 84 (2003) (applying broad evidence rule where “actual cash value” was undefined); O’Connor, 73 Mass. App. Ct. at 210 (applying broad evidence rule to determine ACV of property insured under Massachusetts standard fire insurance policy, because neither the subject policy nor the statute that defines its terms “import[s] a single standard” to determine actual cash value). Here, by contrast, the Standard Policy at issue does import a standard for determining ACV, insofar as the Policy expressly incorporates applicable automobile insurance
 
                                                            -5-
 
law (including Section 133.05(1)) by reference. Unlike the broad evidence rule, which would invest fact-finders with discretion to choose which particular facts and circumstances are appropriate when estimating ACV, Section 133.05(1) expressly requires that ACV be determined based on four enumerated factors. Whether the Policy or Section 133.05(1) specifically requires Plymouth Rock to consider and/or include regulatory fees when it determines ACV is a question of law. See Massachusetts Insurers Insolvency Fund v. Premier Ins. Co., 449 Mass. 422, 426
(2007) (interpretation of Standard Policy is a question of law); Corsetti v. Stone Co., 391 Mass. 1, 12 (1984) (interpretation of regulation is a question of law). As such, the question is properly decided on a Rule 12 motion to dismiss. See, e.g., Skiffington v. Liberty Mut. Ins. Co., 93 Mass. App. Ct. 1, 3 (2018) (deciding coverage dispute in context of motion to dismiss under Rule 12(b)(6)); Casco Bay Fin. Co., LLC v. Quincy Mut. Fire. Ins. Co., 77 Mass. App. Ct. 913, 913
(2010) (same).
            B.        ACV under the Standard Policy
            “We interpret the words of the standard policy in light of their plain meaning, . . . giving full effect to the document as a whole[,] . . . consider[ing] what an objectively reasonable insured, reading the relevant policy language, would expect to be covered . . . [and] interpret[ing] the provision of the standard policy in a manner consistent with the statutory and regulatory scheme that governs such policies.” Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 225 (2011) (quoting Given v. Commerce Ins. Co., 440 Mass. 207, 209 (2003)) (internal quotation marks omitted). “[B]ecause the approved wording of the standard policy is controlled by the Commissioner of Insurance and not by any insurer (see G.L. c. 175, § 113A), we do not construe ambiguities against the insurer.” Id. (quoting Given, 440 Mass. at 210). Bearing these standards in mind, the Court has reviewed the Standard Policy and concluded, as a matter of law, that it
 
                                                            -6-
 
does not require the Defendant to consider or factor in regulatory fees in its determination of ACV.
            As an initial matter, the Standard Policy does not expressly define “ACV,” and is devoid of any other terms therein suggesting that ACV is meant to include regulatory fees. The Court does not construe the Policy’s silence as to regulatory fees as necessarily excluding them from ACV; but it does interpret such silence to mean that the Policy does not require the determination of ACV to include them. See Given, 440 Mass. at 212 (quoting Massachusetts Insurers Insolvency Fund v. Premier Ins. Co., 439 Mass. 318, 323 (2003)) (“Although insurance provisions that are plainly expressed must be enforced . . . those that are conspicuously absent should not be implied.”). Cf. Skiffington, 93 Mass. App. Ct. at 5 (declining to consider third- party claimant’s argument that insurer was liable for title, registration and inspection fees, where claimant did not “point to any provision in the standard policy that would entitle her to reimbursement of those fees”).
            The absence of any language in the Policy requiring regulatory fees to be factored into ACV is consistent with the fact that the “value” of a vehicle, at the time of a collision or otherwise, never includes the costs of its title, registration and inspection, because the value of those items is non-transferable. See G.L. c. 90, § 2 (vehicle registration expires upon transfer of ownership); 540 Code Mass. Regs. § 4.03 (1)(a) (“Every owner or person in control of a motor vehicle which is newly acquired in the Commonwealth shall submit such motor vehicle for a required inspection within seven days of the date on which the motor vehicle is registered to said owner.”). See also Black’s Law Dictionary (11th ed. 2019) (defining “value” as “the amount of . . . money that something commands in exchange”). For this reason, anyone who purchases a
 
                                                            -7-
 
vehicle must pay these regulatory fees anew, a fact signifying that such fees represent a recurrent cost of ownership rather a form of value inhering in the vehicle itself.
            The plain terms of the collision and comprehensive coverage provisions themselves likewise bear no indication that the Policy extends its insurance to regulatory fees. No objectively reasonable insured could expect Policy language promising to “pay for any direct and accidental damage” to compensate them for collateral expenses (such as regulatory fees) that are not directly related to the cost of repairing physical damage to their vehicle. Moreover, insofar as the Policy provides that the insurer “will pay the cost to repair the auto or any of its parts up to the actual cash value of the auto or any of its parts at the time [of the loss or collision],” it is clear that ACV represents in concept an economic ceiling on coverage and not a proxy for the total costs of vehicle replacement.[4] This conclusion is underscored by the fact that none of the factors identified in Section 133.05(1) expressly require ACV to be determined in terms of replacement cost. See Golchin, 460 Mass. at 225 (policy language should be interpreted in a manner consistent with applicable regulatory scheme).[5] For these reasons, the Court finds that the Standard Policy does not require Plymouth Rock to consider or factor regulatory fees into its determination of ACV.
 
---------------------------
 
[4]Insuring for the total (and more expensive) costs of replacement, by contrast, and thereby restoring the insured to its status quo ante, might more naturally be thought to include coverage for incidental regulatory fees incurred in the acquisition of the replacement vehicle. But that is plainly not what the collision and comprehensive coverage provisions of the Policy require.
 
[5]The Plaintiffs argue that case law from other jurisdictions support their construction of the Policy, citing several Florida decisions interpreting ACV to include regulatory fees in support. However, in all of these cases, the policies at issue or the court specifically defined ACV in terms of the cost of replacement. See, e.g., Jones v. Government, 2019 U.S. Dist. LEXIS 120353 at *5 (M.D. Fla. 2019) (“‘Actual Cash Value’ is defined as ‘the replacement cost of the [insured vehicle] less depreciation or betterment.’”); Sos v. State Farm Mut. Auto. Ins. Co., 396 F. Supp. 3d 1074, 1080 (M.D. Fla. 2019) (“[T]he Court finds that actual cash value under the Policy means replacement cost minus depreciation.”). Inasmuch as nothing in either the Policy or Section 133.05(1) requires ACV to be determined by reference to replacement costs, see supra, the Plaintiffs’ reliance on these cases for their current claim is misplaced.
 
                                                            -8-
 
            C.        Section 133.05(1) and ACV
            The Court last considers whether Section 133.05(1) compels Plymouth Rock to include regulatory fees in its calculation of ACV. The Plaintiffs argue that it does, to the extent this regulation requires insurers to consider “the actual cost of purchase of an available motor vehicle of like kind and quality but for the damage sustained.” The Plaintiffs aver that regulatory fees are “actual costs of purchase,” because one cannot purchase and operate a motor vehicle under Massachusetts law without paying them. This argument fails to persuade.
            Although Section 133.05(1) does not define “actual cost of purchase,” the ordinary meaning of “cost” is “‘the amount or equivalent paid or charged for something.’” Skiffington, 93 Mass. App. Ct. at 3 (quoting Merriam-Webster’s Collegiate Dictionary 282 (11th ed. 2007)). See also Commonwealth v. Hourican, 85 Mass. App. Ct. 408, 410-11 (2014) (quoting Young v. Patukonis, 24 Mass. App. Ct. 907, 908 (1987)) (“When the language of a regulation is ‘plain it must be given its ordinary meaning, and the language used constitutes the principal source of insight into regulatory purpose.’”). The “actual cost of purchase of an available motor vehicle,” therefore, is the amount that must actually be paid in exchange for it to the charging seller. As set forth ante, regulatory fees do not add value to an automobile, are not transferrable to a purchaser, and must be paid to the Commonwealth rather than the seller. Accordingly, regulatory fees are not fairly considered a component of the “actual cost” to purchase a vehicle. Indeed, and as a final point, by referring to the “cost” rather than “costs” of purchasing a motor vehicle, Section 133.05(1) appears to contemplate a singly-sourced valuation based on the purchase price paid to a seller (as opposed to one derived from multiple payments made to both seller and state). For these reasons, the Court concludes that Section 133.05(1) does not require the Defendant to consider or factor regulatory fees into its determination of ACV.
 
                                                            -9-
 
            As the Plaintiffs have failed to show that either the terms of the Standard Policy or the provisions of Section 133.05(1) require Plymouth Rock to consider or factor regulatory fees into its determination of ACV, they have failed to state a viable claim as a matter of law. The Defendant’s Motion to Dismiss shall, therefore, be ALLOWED.
CONCLUSION AND ORDER
            For the foregoing reasons, the Defendant’s Motion to Dismiss is ALLOWED.
SO ORDERED.
@/s/Robert B. Gordon, Justice of the Superior Court
@March 22, 2021
 
                                                            -10-
 
 
xxz